991 F.2d 794
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dennis W. GALLIHER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-1505.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1993.
 
 Before KEITH and RYAN, Circuit Judges; PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant, Dennis W. Galliher, appeals the district court's judgment granting the Secretary's motion for summary judgment in an action for Supplemental Security Income and Disability Insurance Benefits. For the reasons stated below, we REVERSE the judgment of the district court.
 
 I.
 
 2
 On July 15, 1985, Galliher filed applications for Supplemental Security Income and Disability Insurance Benefits, alleging disability due to an emotional problem. These applications were denied by the Social Security Administration initially and also upon reconsideration.
 
 
 3
 On May 24, 1987, Galliher requested a hearing on his claims. A hearing was held on November 10, 1987, and Galliher's claims were denied by an Administrative Law Judge (ALJ). Galliher then requested a review of his claims by the Appeals Council. On review, the Appeals Council found that the ALJ's decision was not supported by substantial evidence and remanded the claims to the ALJ for further review.
 
 
 4
 A second hearing of Galliher's claims was held on September 2, 1988. Again, the ALJ denied Galliher's claims for benefits and issued a new decision. The Appeals Council reviewed the ALJ's decision and again remanded the claims to the ALJ for further proceedings and a new decision. The Appeals Council directed the ALJ to "provide [a] rationale for the residual functional capacity and limitations found, as well as delineate all of the claimant's past relevant work." (Notice of Order of Appeals Council, Sept. 25, 1989, at 2).
 
 
 5
 A third and final hearing before the ALJ was held on May 18, 1990. The ALJ again denied Galliher's claims. The Appeals Council denied Galliher's request for further review thereby allowing the ALJ's decision to stand as the decision of the Secretary. Galliher then brought an action in the Eastern District of Michigan, seeking a review and reversal of the Secretary's denial of his claims.
 
 
 6
 On November 11, 1991, Magistrate Thomas A. Carlson reviewed the Secretary's decision and in a Report and Recommendation of November 14, 1991, recommended that the Secretary's denial of Galliher's claims be reversed and the case remanded to the Secretary for a computation of benefits. The district court, however, rejected the magistrate's recommendation and affirmed the Secretary's decision denying Galliher benefits.
 
 
 7
 Although the magistrate and the district court reached different conclusions regarding Galliher's claims, there was agreement on the underlying facts offered in support of the claims. Accordingly, we adopt the relevant facts as stated in Magistrate Carlson's Report and Recommendation, as did the district court.
 
 
 8
 The magistrate adequately summarized Galliher's personal background and testimony regarding his alleged "emotional problem" as follows:
 
 
 9
 Plaintiff was 41 years old at the time of the most recent administrative hearing, had only a sixth grade education, and had been employed as a machine operator and janitor during the relevant past (TR 86-88). As a machine press operator for a plastics company, he was required to be on his feet for most of the work day and to lift upwards of fifteen pounds on a regular basis (TR 90). Claimant stopped working in 1986 as press operator due to an inability to get along with his boss and fellow employees (TR 99-100). He also found the job to be so dull that he often became irritable and depressed (TR 103). Claimant testified that he was disabled because he no longer trusted other people, had little patience with them, and that he often secluded himself in order to minimize his contacts with his neighbors, friends and relatives (TR 97-98, 100, 111, 129, 193). Psychological counselling and medications allegedly did not help improve his social skills and he remained depressed despite such therapy (TR 198). Plaintiff added that he habitually lost his temper, and he described one incident where he threw a car jack through the front windshield upon discovering that his car had not been repaired as promised (TR 199).
 
 
 10
 (Mag.'s Rep. and Rec at 2-3).
 
 
 11
 The magistrate summarized the vocational evidence presented regarding Galliher's capacity to perform his past work activity as follows:
 
 
 12
 A Vocational Expert, Lois Brooks, classified Plaintiff's past work as a machine operator as sedentary to medium, semiskilled and unskilled activity, while his job as a janitor was thought to be light to medium and unskilled (Tr 206-207). The witness testified that if all of the claimant's subjective allegations of disabling symptomatology were true, he would not be able to perform any of his past work with the possible exception of the one sedentary press operator job he held in the past (TR 209). However, based upon a series of hypothetical questions posed by the ALJ concerning a claimant with Plaintiff's inability to follow complex job instructions and his intolerance of other people, the Vocational Expert testified that claimant could still perform his past janitorial and press operation jobs (TR 210-212). The VE testified that approximately 6,000 janitorial jobs and 8,000 machine operator jobs, that were considered to be nonstressful, existed in the regional economy (TR 213).
 
 
 13
 (Mag.'s Rep. and Rec. at 3).
 
 
 14
 The magistrate summarized the medical evidence of Galliher's emotional state as follows:
 
 
 15
 The medical evidence revealed that Plaintiff was hospitalized in July 1985 with a diagnosis of adjustment disorder with mixed features. He reportedly had been increasingly anxious and irritable prior to his admission, but was well orientated and coherent upon initial examination (TR 280-281). Dr. Constance Hislop, Ph.D conducted a MMPI personality test on July 19, 1986, which indicated that Plaintiff was depressed and anxious, had a very negative self image, and was unable to normally interact with other people because of an ego deficit (TR 283). Claimant remained in the hospital for over a month until all signs of psychosis had disappeared, and at the time of discharge, he was no longer experiencing any suicidal or homicidal ideation (TR 284).
 
 
 16
 (Mag.'s Rep. and Rec. at 3-4).
 
 
 17
 The magistrate also summarized the testimony offered by several psychiatrists and psychological counselors who evaluated Galliher.
 
 
 18
 A consultative psychiatrist evaluation was conducted on August 28, 1986 by Dr. Barry Monse, who found that claimant had a low self esteem, possessed poor communication skills, had little or no ambition, and showed no motivation to pursue any hobbies or social contacts. Plaintiff's stream of mental activity was described by Dr. Monse as slow, and he was said to be depressed but friendly (TR 287-290). A second consultative examiner, Dr. Charles Williams, reported on November 20, 1986 that Plaintiff suffered from a major affective disorder with a major episodic reaction in which he exhibited a great deal of anger and hostility towards others. While claimant still harbored some of that anger, Dr. Williams felt that he had recovered adequately from that episode (TR 293-294).
 
 
 19
 Ann Endelman, M.A., a family counselor, reported on October 26, 1987 that she had seen Plaintiff during a three month period in order to help him alleviate his feeling of anxiety and nervousness around people. Ms. Endelman stated that the claimant had made a lot of progress towards reducing those symptoms, but still exhibited signs of a schizoid personality disorder (TR 313). Plaintiff's treating psychiatrist, Dr. S.I. Ahmad, commented in a letter dated August 15, 1987 that claimant was still suffering from depression and recurrent schizoid personality traits. The treating doctor opined that Plaintiff was totally disabled, but that he was scheduled to attend some vocational training in order to get a better idea of residual capacity (TR 314-315).
 
 
 20
 Plaintiff was re-hospitalized on January 22, 1988 after having homicidal thoughts and displaying paranoid behavior. He was treated for a moderate to severe schizo-affective disorder over a three week period, but his level of adaptive functioning continued to be poor (TR 349-350). Dr. Ahmad commented in July 1988 that Plaintiff was taking medications for schizophrenia, chronic undifferentiated type, which would preclude him from being around moving machinery. The treating physician reiterated his earlier opinion that Plaintiff was unable to work in a competitive work environment given his inability to deal with work-related stress or make any kind of decision.
 
 
 21
 Dr. Christian Barrett, Ed.D., a psychologist and vocational expert, evaluated Plaintiff in February 1990 and found him to have a below average mental ability. Deficits were also noted in claimant's coordination, planning and organization, and fine motor skills. While there were times that Plaintiff became easily confused, he did not appear to have any formal delusions or bizarre ideation. Dr. Barrett felt that the claimant had made improvement since his January 1988 hospitalization (TR 368-369).
 
 
 22
 Plaintiff was evaluated by Dr. S. Koegler, a board certified psychiatrist, who was requested to fill out a mental residual functional capacity evaluation on February 24, 1990. A mental status report indicated that the claimant had questionable contact with reality as a result of severe depression and a schizoid affective disorder. Given the combination of his mental impairments and borderline intelligence, Dr. Koegler doubted that Plaintiff could make the necessary adjustments that would allow him to be competitively employed (TR 358-365).
 
 
 23
 Mag.'s Rep. and Rec. at 4-6).
 
 
 24
 Based on the above facts, the ALJ concluded in its final decision that Galliher was not disabled because he was not so severely impaired that he could not perform his past jobs as a janitor or machine operator. (ALJ Notice of Decision--Denial, July 17, 1990). On review, the magistrate found that the ALJ's decision denying benefits to Galliher was not supported by substantial evidence and recommended that the claims be remanded to the Secretary for a computation of benefits. The district court, however, rejected the magistrate's recommendations and concluded that "the medical reports plus the vocational expert's testimony and the testimony of Plaintiff gave the Secretary the substantial evidence needed to deny Plaintiff's claim." (Opinion and Order at 11). The district court affirmed the Secretary's decision and this timely appeal followed. On appeal Galliher argues that the district court's grant of summary judgment affirming the Secretary's denial of his claims for benefits is not supported by substantial evidence.
 
 II.
 
 25
 Our role in this appeal is limited to a determination of whether the Secretary's decision is supported by substantial evidence. See Mullen v. Bowen, 800 F.2d 535 (6th Cir.1986). A two part procedure must be followed when determining whether disability exists due to a mental disorder. 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00(A) (1991).
 
 
 26
 A claimant must first show "documentation of a medically determinable impairment(s) as well as consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work...." Id. The A criteria of § 12.04 provides a means to "medically substantiate the presence of a mental disorder." Id. Secondly, a claimant must show that he has functional limitations resulting from his mental disorder that are inconsistent with the ability to engage in substantial, gainful activity. 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00(C) (1991). Specifically, a claimant must show that his mental disorder has resulted in at least two of the following paragraph B criteria of § 12.04:
 
 
 27
 1. Marked restriction of activities of daily living; or
 
 
 28
 2. Marked difficulties in maintaining social functioning; or
 
 
 29
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 30
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 31
 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(B) (1991).
 
 
 32
 The Secretary found that Galliher suffers from two mental impairments listed in the A criteria of § 12.04, thus satisfying the first part of his burden for establishing disability. However, Galliher failed to convince the Secretary that his mental impairments were severe enough to satisfy the B criteria of § 12.04 regarding functional limitations. The Secretary found that Galliher satisfied only one of the B criteria and thus failed to establish his disability for purposes of receiving benefits.
 
 
 33
 Based on our review of the record, we find that the Secretary's decision is not supported by substantial evidence. We disagree with the Secretary's conclusion that Galliher's emotional problems do not satisfy at least two of the B criteria of § 12.04. The evidence of record, as summarized above, shows that Galliher's emotional problems have resulted in each of the four B criteria: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration, persistence and pace resulting in failures to complete tasks in a timely manner; and (4) repeated episodes of deterioration or decompensation in work or work-like settings.
 
 
 34
 The record contains testimony from Galliher stating that he was distrustful of people, had little patience with people, and often secluded himself to minimize his contacts with his neighbors, friends and relatives. (Mag.'s Rep. and Rec. at 2-3). There is also evidence in the record that Galliher physically assaulted a former employee (TR. 134-135), and threw a car jack through his windshield when he became upset about his car not having been properly repaired (TR. 199). Galliher's testimony regarding his emotional state is supported by that of the medical experts who examined and treated him.
 
 
 35
 Dr. Hislop conducted a personality test of Galliher on June 19, 1986, which indicated that Galliher was depressed and anxious, and had a very negative self-image. (Mag.'s Rep. and Rec. at 3-4). This test also indicated that Galliher was unable to normally interact with other people. (Id.). Dr. Monse, a psychiatrist, evaluated Galliher and found that his communication skills were poor, that he had little or no ambition, and that he showed no motivation to pursue any hobbies or social contacts. (Id. at 4). Dr. Endelman, a family counselor, reported in October of 1987 that Galliher was suffering from schizoid personality disorder. Galliher's treating physician, Dr. Ahmad, also reported that he was suffering from depression and schizoid personality traits in a letter dated August 15, 1987. (Id. at 4-5).
 
 
 36
 On January 22, 1988, Galliher was hospitalized after experiencing homicidal thoughts and displaying paranoid behavior. He was treated over a three-week period for a schizo-affective disorder. Dr. Ahmad testified that Galliher was unable to work in a competitive environment because of his inability to deal with work related stress. (Id. at 5). A mental functional capacity evaluation of Galliher conducted on February 24, 1990, revealed that his contact with reality is questionable. (Id. at 6).
 
 
 37
 Based on our review of the evidence as summarized above, we find that the Secretary's decision denying benefits to Galliher is not supported by substantial evidence. Accordingly, the district court erred in affirming the Secretary's decision.
 
 III.
 
 38
 For the foregoing reasons, we REVERSE the decision of the district court and REMAND this case to the Secretary for computation and payment of benefits.
 
 
 39
 RYAN, Circuit Judge, dissenting.
 
 
 40
 Because I believe that substantial evidence supports the Secretary's decision, I respectfully dissent from the majority's decision to remand this case to the Secretary for computation and payment of benefits.
 
 I.
 
 41
 As the majority correctly states, our review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards when reaching its conclusions. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence" is more than a "scintilla" of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401.
 
 
 42
 When this court reviews the Secretary's decision, we may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The record before us contains conflicting evidence. The majority seems to have resolved all conflicts raised in the record in favor of the claimant, for in its opinion reversing the Secretary's decision, the majority focuses only on the evidence supporting reversal of the Secretary's decisions, and ignores all evidence that supports the Secretary's findings. However, when determining whether the Secretary's factual findings are supported by substantial evidence, our duty is to examine the evidence in the record taken as a whole, Born v. Secretary of Health & Human Services, 923 F.2d 1168, 1173 (6th Cir.1990), and we are not free to base our decision on a single piece of evidence and disregard other pertinent evidence in making a "substantial evidence" determination. Mowery v. Heckler, 771 F.2d 966, 970 (6th Cir.1985). If supported by substantial evidence, the Secretary's decision must be affirmed even if a reviewing court would decide the matter differently, Born, 923 F.2d at 1173, and even if substantial evidence would also support the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (en banc ). In this case, substantial evidence supports the Secretary's decision, and we should, therefore, affirm.
 
 II.
 A.
 
 43
 The claimant who seeks disability benefits bears the burden of establishing that he is disabled, and that his disability precludes him from engaging in any substantial gainful activity. Born, 923 F.2d at 1173. The regulations define disability as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that twelve months." 20 C.F.R. § 404.1505; see also 42 U.S.C. § 423(d). An individual is considered disabled under the Social Security Act only if his physical or mental impairment is of such severity that he is not only unable to do any past relevant work, but also any other work which exists in the national economy, considering his age, education, work experience, and residual functional capacity. Id. If a claimant does not have an impairment or a combination of impairments which is so severe as to significantly limit his ability to do basic work activity, then he is not disabled. 20 C.F.R. §§ 404.1520(c) and 416.920(c).
 
 
 44
 Subjective allegations of symptoms and functional limitations alone are not sufficient to support a finding of disability. 20 C.F.R. § 404.1529, 416.929; McCormick v. Secretary of Health & Human Services, 861 F.2d 998, 1002-03 (6th Cir.1988). Objective evidence must establish the existence of an underlying medical condition. Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986).
 
 
 45
 The social security regulations established a five-part evaluation process for determining whether a claimant is disabled:
 
 
 46
 1) If the claimant is presently employed, he is not disabled regardless of the medical findings, 20 C.F.R. § 404.1520(b);
 
 
 47
 2) If the impairment is not "severe," the claimant is not disabled, 20 C.F.R. § 404.1520(c);
 
 
 48
 3) If the claimant suffers from a severe impairment that meets the duration requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P, Regulation 4, then the claimant is disabled, and the Secretary shall not consider age, education, and work experience, 20 C.F.R. § 404.1520(d);
 
 
 49
 4) If the individual is capable of performing work he has done in the past, he is not disabled, 20 C.F.R. § 404.1520(e);
 
 
 50
 5) If the individual cannot perform past work, other factors will be considered to determine whether the claimant can perform other work existing in the national economy. If he can perform such work, he is not disabled, 20 C.F.R. § 404.1520(f).
 
 
 51
 In this case, the Secretary determined that Galliher satisfied the first two steps but found that he did not meet the severity requirements of step three. The Secretary also determined that Galliher was capable of performing past work under step four. As a result, the Secretary determined that Galliher was not disabled. These findings are supported by substantial evidence.
 
 B.
 
 52
 Under step three of the regulations' five-part evaluation process, a mental impairment must satisfy two types of criteria to be considered disabling. The "A" criteria "substantiates the presence of the alleged disorder." 20 C.F.R. Pt. 404, Subpart P, Appendix 1 § 12.00(A); See 20 C.F.R. §§ 404.1520a, 416.920(a). The "B" criteria requires an assessment of the functional limitations imposed by the mental disorder to determine whether the limitations are so severe that they seriously interfere with the claimant's ability to function "independently, appropriately, and effectively." 20 C.F.R. Pt. 404, Subpart P, Appendix 1 § 12.00(C). The Secretary found that the medical evidence established that Galliher suffered from an "affective disorder" under section 12.04 and thus met the "A" criteria, but that Galliher failed to establish that his disorder had reached the severity required under the "B" criteria.
 
 
 53
 The "B" criteria of section 12.04 requires the claimant to demonstrate at least two of the following limitations:
 
 
 54
 1. Marked restriction in daily living activities;
 
 
 55
 2. Marked difficulties in maintaining social functioning;
 
 
 56
 3. Deficiencies of concentration or persistence resulting in frequent failure to complete tasks in a timely manner; or
 
 
 57
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation.
 
 
 58
 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04(C). According to the social security regulations, "marked" means "more than moderately but less than extreme." Section 12.00(C). The Secretary found that because Galliher met only the second of the above limitations, he did not satisfy the "B" criteria of section 12.04 and, therefore, did not suffer from a listed impairment.
 
 
 59
 The majority has decided to remand to the Secretary for a computation of benefits because the majority "disagree[s] with the Secretary's conclusion that Galliher's emotional problems do not satisfy at least two of the B criteria of § 12.04" Op. at 7. The majority believes that there is ample evidence in the record illustrating the severe nature of Galliher's functional limitations for each of the four "B" criteria. However, it does not matter whether this reviewing court agrees or disagrees with the Secretary's findings, and it does not matter whether substantial evidence also supports the opposite conclusion than that made by the Secretary. The only issue before us is whether substantial evidence supports the Secretary's conclusion.
 
 
 60
 The Secretary first determined that Galliher does not suffer from a marked restriction in daily living activities. To establish that the limitations on his activities are "marked," Galliher must demonstrate that his impairment seriously interferes with his ability to function independently, appropriately, and effectively. Foster v. Bowen, 853 F.2d 483, 491 (6th Cir.1988). The Secretary and the district court relied on Galliher's testimony that the medication he takes helps him deal with his daily activities at home. Galliher testified that he cares for his children while his wife works, drives family members to and from work and school, and he completes some household chores. As the district court found, the evidence on which the Secretary relied did not demonstrate the type of problems in daily living, concentration, and stress-related situations necessary for a finding of marked restriction in daily living activities under section 12.04.
 
 
 61
 Second, the Secretary determined that Galliher does not suffer from a significant deficiency in concentration nor does he lack the ability to complete minor tasks. The Secretary noted that Galliher's activities at home demonstrate that he is able to concentrate and complete minor tasks. Finally, the Secretary and the district court determined that there is insufficient evidence to support a finding that Galliher suffers from repeated episodes of deterioration in work or work-like settings. The evidence shows that, until 1984, plaintiff worked for five years as a self-employed janitor without significant problems, and he held two positions from 1984-86. In concluding that Galliher proved he suffered from "repeated episodes" of deterioration at work, the majority refers to two instances where Galliher lost his temper. On one occasion, Galliher assaulted an employee while at work, and on another he threw a car jack through a windshield when he had trouble repairing his car at home. But these instances, which occurred two years apart, hardly require a finding that Galliher suffered from "repeated episodes" of deterioration at work. As the district court stated, "[Galliher]'s work experience, while far from stable, does not display the type of recurrent and severe problems typically associated with someone suffering from a disabling mental condition." Cf. Lankford v. Sullivan, 942 F.2d 301, 307-08 (6th Cir.1991).
 
 
 62
 Certainly, a reasonable mind could accept the evidence relied on by the Secretary as adequate to support the Secretary's conclusion that Galliher failed to establish the severity requirements of the "B" criteria. See Bowen, 853 F.2d at 483. Consequently, this court should affirm the district court's conclusion that substantial evidence supports the Secretary's finding regarding Galliher's failure to meet the seventy requirements of step three.
 
 C.
 
 63
 Because the Secretary found that Galliher did not meet step three of the regulations' evaluation process, the Secretary looked to step four to determine whether Galliher could perform past work. While Dr. Ahmad, the treating physician, opined that Galliher was "unemployable," he also indicated that Galliher could work with a supportive supervisor in a "non-competitive" work setting. At least one consulting physician concluded that Galliher is able to manage his own affairs and, in fact, found that Galliher tends to exploit situations for his own gain. This consulting physician noted that, although Galliher may go through periods of getting along poorly with others, he is capable of behaving appropriately and "retains the mental residual functional capacity to engage in unskilled work." Based on the medical records and the testimony of the physicians who examined Galliher, a vocational expert opined that Galliher could function in jobs where the duties were not complex and where he had limited contact with people. Such jobs included Galliher's past work as a janitor and machine operator. The expert testified that such "non-competitive" jobs were readily available in the national economy and that approximately 6,000 janitorial jobs and 8,000 machine operator jobs existed in the regional economy.
 
 
 64
 Most importantly, Dr. Ahmad, Galliher's own treating physician, never opined that Galliher was totally disabled; rather, he indicated that Galliher could work in a "sheltered workshop" that included a "sensitive and attentive supervisor" in a noncompetitive atmosphere. Recognizing that Galliher was limited in his abilities to follow complex job instructions and to get along with co-workers and supervisors, the Secretary concluded that Galliher's limitations would not preclude him from working as a janitor or machine operator once again. Substantial evidence supports the Secretary's conclusions.
 
 III.
 
 65
 I must respectfully dissent because the majority has failed to consider all the evidence before the Secretary. After considering the entire record, I find that the evidence sufficiently supports the Secretary's conclusion that although Galliher has a severe affective disorder, depression, and paranoid personality feature, he nevertheless maintains the capacity to perform simple, nonstressful tasks that involve limited contact with other people.
 
 
 66
 The district court's decision should be affirmed, and the Secretary's decision should be upheld.