NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0022n.06

No. 15-1315

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| KIMBERLY KEPKE, | ) | **FILED** |
| | ) | Jan 12, 2016 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE: MOORE and COOK, Circuit Judges; PEARSON, District Judge.**[*]

**PEARSON, District Judge.** Plaintiff-Appellant Kimberly Kepke appeals the district court's judgment affirming the denial of her applications for disability insurance benefits and supplemental security income benefits. We AFFIRM the district court's judgment.

**Procedural Background.** Kepke applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning September 13, 2006. After her application was denied, she requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ issued a decision denying her claim. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Kepke's request for review.

Kepke filed a second application for DIB and SSI, again alleging disability beginning September 13, 2006. Her second application was denied, and she requested a hearing before an ALJ. The ALJ issued a decision denying her second claim. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Kepke's request for review.

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation

Following the second denial, Kepke filed a complaint in federal district court seeking review of the ALJ's last decision. The parties filed cross-motions for summary judgment and Kepke filed a motion for sentence six remand. The magistrate judge issued a report recommending that the Commissioner's motion be granted and Kepke's motions be denied. The district court entered an order adopting the magistrate judge's recommendation in its entirety. R. 29 (D. Ct. Order at 1-2) (Page ID #1124-25). This timely appeal followed.

**Jurisdiction and Standard of Review**. The Court has jurisdiction over the final ruling of the district court pursuant to 28 U.S.C. § 1291, 42 U.S.C. § 405(g), and 42 U.S.C. § 1383(c)(3).

The Court reviews *de novo* district court decisions in Social Security cases. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citation omitted). Under 42 U.S.C. § 405(g), review of the Commissioner's decision is limited to determining "whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards." *Reeves v. Comm'r of Soc. Sec.*, 618 Fed.App'x. 267, 272 (6th Cir. 2015); *see also Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) ("The Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). The administrative findings of the Commissioner "are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . . If the

[administrative] decision is supported by substantial evidence, a reviewing court must affirm." *See Lindsley*, 560 F.3d at 604-05 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)); *see also Schmiedebusch v. Comm'r of Soc. Sec.*, 536 Fed.App'x. 6737, 649 (6th Cir. 2013) (stating that the ALJ "retains a 'zone of choice' in deciding whether to credit conflicting evidence").

**A. Disability Determination**.  In determining whether an individual is disabled within the meaning of the Social Security Act, the ALJ engages in a five-step sequential inquiry, pursuant to 20 C.F.R. § 404.1520(a)(4).  "If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009).  The inquiry proceeds as follows:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Id.* (citations omitted); 20 C.F.R. § 404.1520(a)(4).

"The claimant bears the burden of proof through the first four steps of the inquiry, at which point the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . .'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted).

In this case, the ALJ employed the five-step inquiry and ultimately determined that Kepke was not disabled within the meaning of the Social Security Act. At step one, the ALJ found that Kepke had not engaged in any substantial gainful activity since April 30, 2010. At step two, the ALJ found that Kepke's hypertension, attention deficit disorder, chronic obstructive pulmonary disease, adjustment disorder with anxiety and depressed mood, right tibial plateau fracture status post right knee replacement, obesity, and L4-5 spinal stenosis constituted severe impairments. At step three, the ALJ determined that Kepke's impairments or combination of impairments do not meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations.

The ALJ then determined that Kepke possessed the residual functional capacity ("RFC") to perform sedentary work, except that she requires a sit/stand option; can only rarely climb ramps or stairs; can only rarely stoop; cannot crouch; must avoid even moderate exposure to temperature extremes; to wetness/humidity, and to chemicals; must avoid all exposure to environmental irritants, and to poorly ventilated areas; must avoid even moderate exposure to hazards like dangerous machinery and unprotected heights; is limited to simple, unskilled work that does not require any complex written or verbal communication; must be employed in a low-stress job defined as requiring no more than occasional decision-making and no more than

occasional changes in the work setting; and should have no more than occasional interaction with the public and with co-workers.

At step four, the ALJ concluded that Kepke was unable to perform her past relevant work. Finally, at step five, the ALJ determined that the position of surveillance-system monitor is a job that exists in significant numbers in the national economy that Kepke can perform. Based upon the ALJ's finding at step five, the ALJ concluded that Kepke was not disabled within the meaning of the Social Security Act.

**B. Evaluation of Treating Sources**. Kepke identified two treating physicians—Dr. Chapman and Dr. Pinson. She argues that the ALJ and magistrate judge erred in evaluating the opinions of her treating sources.

A treating source's medical opinion must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal citations and quotations omitted); 20 C.F.R. § 404.1527(d)(2). In determining whether substantial evidence is inconsistent with the treating source's opinion, the ALJ must examine the record as a whole, "not just medical opinions." *Hickey-Hanes v. Barnhart*, 116 Fed.App'x. 718, 723-24 (6th Cir. 2004). If he declines to accord controlling weight, the ALJ must give "good reasons" for the weight he accords the treating source opinion, applying factors such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating

source . . . ." *See* 20 C.F.R. § 404.1527; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Even if the treating source's opinion is not accorded controlling weight, there remains a rebuttable presumption that the opinion is entitled to great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). However, "[t]he agency's treating-source rule permits an ALJ to reject a treating source's opinion if substantial evidence in the record contradicts it." *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.App'x. 802, 805 (6th Cir. 2011).

**(i)** Dr. Chapman, treating psychiatrist, completed a Psychiatric Evaluation Form for Anxiety Related Disorders on February 22, 2012, in which he diagnosed Kepke with "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; marked restriction in activities of daily living, social functioning and concentration, persistence or pace." R. 8-2 (ALJ Decision at 32) (Page ID #66). Kepke argues the ALJ erred in discounting this opinion. Contrary to Kepke's assertion that "there was no real analysis" of Dr. Chapman's opinion (Appellant Br. at 22), the ALJ provided specific reasons for discounting the opinion.

The ALJ noted that Dr. Chapman treated Kepke only monthly from December 2011 to February 2012. It was not improper for the ALJ to discount Dr. Chapman's opinion on the basis that he treated Kepke only three times over a three-month period. *See e.g., Mireles ex rel. S.M.M. v. Comm'r of Soc. Sec.*, 608 Fed.App'x. 397, 398 (6th Cir. 2015) ("On appeal, Mireles claims that the ALJ rejected Dr. Jeney's "treating-source opinion" without a legal basis and ignores the lower court's classification of Dr. Jeney as a non-treating source. He fails to

persuade us that the lower court misclassified Dr. Jeney, who examined S.M.M. no more than three times."); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 Fed.App'x. 997, 1000-01 n.3 (6th Cir. 2011) (stating that "it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source . . .").

The ALJ also properly discounted Dr. Chapman's opinion because it relied heavily on Kepke's self-reporting, and "seemed to uncritically accept as true most, if not all, of what [Kepke] reported." R. 8-2 (ALJ Decision at 33) (Page ID #67). Kepke argues on appeal that psychiatric examinations require use of a patient's own statements, and psychiatry "does not readily lend itself to the same objective substantiation found in other areas." Appellant Br. at 20. Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion. *See e.g., Francis*, 414 Fed.App'x. 802, 804 ("Dr. Killefer's pain-related statement, on the other hand, is not a "medical opinion" at all— it merely regurgitates Francis's self-described symptoms."). Kepke's argument that only three of the 25 questions in Dr. Chapman's opinion were identified as "per consumer report" is also unpersuasive because some of Dr. Chapman's major diagnoses, such as "recurrent severe panic attacks" and "recurrent obsessions or compulsions which are a source of marked distress," were identified as "per consumer report." R. 10-9 (Psychiatric Evaluation Form at 755-56) (Page ID #818-19).

Additionally, the ALJ found that Dr. Chapman's checklist opinion constituted weak medical evidence because of its conclusory nature. While checklist opinions are not *per se* unreliable in this context, it is not improper for an ALJ to take into consideration the format of a

medical opinion, especially in light of other factors in the record that signal unreliability. The Court has held that an ALJ properly discounted a treating source's questionnaire because the source "failed to provide any explanation for his responses." *See Price v. Comm'r of Soc. Sec. Admin.*, 342 Fed.App'x. 172, 176 (6th Cir. 2009). Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on these grounds.

According to Kepke, Dr. Chapman's opinion "is supported by information from psychiatric sessions and treatment notes." Appellant Br. at 21. However, as the ALJ noted, in Dr. Chapman's psychiatric evaluation of Kepke and progress note (dated December 7, 2011 and January 4, 2012, respectively), Dr. Chapman's reviews of Kepke were positive. He stated that Kepke "demonstrated good grooming, timeliness . . . calm behavior with social smile, intact judgment, logical and coherent thought process . . ., fair insight, [and] average intelligence . . . ." R. 8-2 (ALJ Decision at 30) (Page ID #64). These observations do not comport with Dr. Chapman finding, just one month later, that Kepke has marked restrictions in daily living, social functioning, and concentration, persistence or pace.

Therefore, the ALJ gave good reasons for discounting Dr. Chapman's opinion, and satisfied the mandates of 20 C.F.R. § 404.1527 by considering some of the listed factors, including the length of the treatment relationship and frequency of examination, the supportability of Dr. Chapman's opinion, and the consistency of the opinion with the record as a whole. *See Francis*, 414 Fed.App'x. at 804 (citation omitted) ("Although [20 C.F.R. § 404.1527(d)(2)] instruct[s] an ALJ to consider these factors, they expressly require only that

the ALJ's decision include "good reasons . . . for the weight . . . give[n] [to the] treating source's opinion—not an exhaustive factor-by-factor analysis.").

Lastly, Kepke argues that the ALJ's failure to indicate the weight he accorded to Dr. Chapman's opinion "mandates reversal." Appellant Br. at 22. Though SSR 96-2p provides that the ALJ must be sufficiently specific as to the weight he accords a treating source opinion and the reasons for that weight, an ALJ's failure to explicitly state the weight he accords does not always constitute reversible error. *See e.g., Bass v. McMahon*, 499 F.3d 506, 510-11 (6th Cir. 2007) (finding that the "failure to explicitly state how much weight the ALJ was providing [the treating source's] observations is harmless . . ."). While the ALJ did not articulate a specific weight for Dr. Chapman's opinion, he made sufficiently clear his reasons for discounting the opinion. *See Francis*, 414 Fed.App'x. at 805 ("In assigning no weight to [the treating source's] opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more . . . . Both we and Francis possess a "clear understanding" of why the ALJ rejected [the] opinion."). The ALJ did not err in rejecting Dr. Chapman's opinion.

**(ii)** Dr. Pinson, Kepke's treating primary care physician, treated her monthly beginning on August 29, 2008, and completed a Pulmonary Medical Source Statement on January 24, 2012. In this statement, he diagnosed Kepke with "COPD; severe stenosis; degenerative joint disease of cervical and lumbosacral spine; anxiety; hypothyroid; hypertension and radiculopathy." R. 8-2 (ALJ Decision at 31) (Page ID #65). Based on these diagnoses, Dr. Pinson opined that

Kepke's resultant work limitations are quite restrictive. For example, he found that Kepke is likely to (1) be off task for 25% or more of the workday, (2) be absent from work "more than four days per month," and (3) require three to four un-scheduled 10-minute breaks in the workday, during which she would need to lie down or sit quietly. R. 10-9 (Pulmonary Medical Source Statement at 763-65) (Page ID #826-28). Kepke contends the ALJ failed to give "good reasons" for not according this opinion controlling weight.

The ALJ determined that "there is nothing in Dr. Pinson's medical records to support the degree of limitation he alleged in his medical source statement," and that "[his] opinion is out of proportion with the medical evidence and is given little weight." R. 8-2 (ALJ Decision at 32) (Page ID #66). The ALJ noted that the records indicate Kepke received only conservative treatment for her ailments, a fact which constitutes a "good reason" for discounting a treating source opinion. *See e.g., Lester v. Soc. Sec. Admin.*, 596 Fed.App'x. 387, 389 (6th Cir. 2015) (finding the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment); *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will look at the treatment the source has provided . . . .").

In a similar vein, the ALJ also properly took note that during the relevant time period, Kepke did not require hospitalizations or emergency room visits for her conditions, including her respiratory impairments. This undermines Dr. Pinson's opinion regarding the severity of

Kepke's asthma attacks and other conditions. *See e.g., Moore v. Comm'r of Soc. Sec.*, 573 Fed.App'x. 540, 542 (6th Cir. 2014) (That the claimant "did not require frequent emergency room visits for asthma attacks or other acute respiratory problems" was not in alignment with the "clinical findings and medical evidence."). Furthermore, Kepke has not pointed to "any treatment notes from Dr. Pinson that recommended restrictions similar to those he asserted in support of Kepke's disability claim." Appellee Br. at 23; *See Essary v. Comm'r of Soc. Sec.*, 114 Fed.App'x. 662, 667 (6th Cir. 2004) ("Dr. Twilla's failure to catalog such restrictions in his treatment notes so as to maintain an accurate medical history calls into question whether Essary was in fact so restricted.").

Kepke cites only to one undated pulmonary function test as objective evidence that supports Dr. Pinson's pulmonary findings, and the ALJ found that the undated findings were called into question by "[a] chest x-ray performed on October 26, 2011 [that] was normal." R. 8-2 (ALJ Decision at 30) (Page ID #64). Moreover, Dr. Pinson's Pulmonary Medical Source Statement did not even reference the results of that pulmonary function test. These facts provide substantial evidence on which the ALJ properly called Dr. Pinson's opinion into question.

Kepke contends that Dr. Pinson diagnosed a number of other conditions besides the pulmonary condition (including "degeneration, radiculopathy and stenosis in the cervical and lumbar spines, hypothyroidism, hypertension, and anxiety") that were supported by objective evidence, and that the ALJ failed to consider in combination with all of her impairments. Appellant Br. at 25-26, 28. However, Kepke fails to demonstrate how the RFC does not account for these conditions. As the Commissioner states, the ALJ "accommodated the limitations

identified by Dr. Pinson that were credibly supported by the record as a whole, and appropriately declined to include limitations that were not supported." Appellee Br. at 25.

The Court is unpersuaded by Kepke's argument that even if Dr. Pinson's opinion is not entitled to controlling weight, it is "still entitled to deference, the greatest weight and adoption." Appellant Br. at 28. The ALJ sufficiently rebutted the presumption of deference by showing that Dr. Pinson's opinion is contradicted by substantial evidence on the record. *See Rogers*, 486 F.3d at 242. The ALJ did not err in discounting Dr. Pinson's opinion.

**C. Evaluation of Non-Examining Source Opinions**. Kepke contends that the ALJ reversibly erred by (1) failing to explain why he accepted the opinions of non-examining state agency doctors, Dr. Balunas and Dr. Kuiper, who did not have the benefit of completely reviewing all of the medical records, and (2) elevating their opinions over those of Kepke's treating sources. The un-reviewed records include some of the treatment records of Dr. Pinson and Dr. Chapman which were submitted after Dr. Balunas and Dr. Kuiper submitted their opinions.

Kepke misconstrues the Court's holding in *Blackley v. Commissioner of Social Security* as providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record. 581 F.3d 399, 409 (6th Cir. 2009). The Court's holding in *Blackley* is far more limited, requiring only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give "some indication" that he "at least considered" that the source did not

review the entire record. *Id.* In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny.

Here, the ALJ's decision indicates that he subjected Dr. Balunas's opinion to at least some scrutiny, because the ALJ disagreed with Dr. Balunas's assessment of Kepke's limitations in her activities of daily living and social functioning, and applied even greater restrictions in this area than Dr. Balunas opined were appropriate. As to Dr. Kuiper's opinion, the ALJ's scrutiny is not as explicit. However, Dr. Kuiper stated in his opinion that he was adopting the prior RFC because there had not been any new evidence since the prior ALJ decision, while the ALJ stated that "the evidence of record shows that there has been a change in the claimant's condition since the prior decision . . . ." R. 8-2 (ALJ Decision at 26) (Page ID #60). The ALJ's adoption of Dr. Kuiper's opinion, taken together with the ALJ's subsequent statement that there had, in fact, been a "change in [Kepke]'s condition" indicates that the ALJ was aware that Dr. Kuiper did not have the benefit of reviewing all of the records, and took that into consideration. These facts constitute "some indication" that the ALJ considered the nature of the non-examining source opinions and subjected those opinions to scrutiny.

Additionally, Dr. Balunas's findings are consistent with other record evidence, such as the opinion of Dr. Bray, an examining state agency doctor. Dr. Bray, like Dr. Balunas, found that Kepke is capable of executing simple tasks. Kepke's argument that the ALJ did not cite Dr. Bray's opinion as support for Dr. Balunas's opinion is unpersuasive. Dr. Bray's opinion was included in the ALJ's decision and Kepke has not shown that the ALJ did not take it into consideration when weighing Dr. Balunas's opinion. Equally unpersuasive is Kepke's argument

that Dr. Bray's opinion is irrelevant because the ALJ ultimately found greater limitations than those suggested by Dr. Bray. The ALJ's more restrictive findings do not negate that Dr. Balunas's and Dr. Bray's opinions are consistent, objective record evidence.

While the ALJ should have clearly stated his reasons for adopting Dr. Balunas's and Dr. Kuiper's opinion, this error is not fatal because their opinions are consistent with other record evidence, the inconsistent treating source opinions were properly discredited, and Kepke has not shown that she has been prejudiced on the merits. *See Keeton v. Comm'r of Soc. Sec.*, 583 Fed.App'x. 515, 531 (6th Cir. 2014) (finding that the ALJ's "fail[ure] to articulate any reasons for elevating part of [a non-examining source]'s opinion over the other opinions in the record" did not constitute reversible error, even though the source conducted only "a partial review of [the claimant]'s medical records," because her opinion was consistent with the record, not inconsistent with the opinions of treating sources, and "it is difficult to say that the ALJ's failure to include a full explanation for adopting [the] opinion prejudiced Plaintiff on the merits or deprived him of a substantial right").

The Court is also unpersuaded by Kepke's argument that the ALJ erred by applying less scrutiny to the opinions of the non-examining doctors than to that of the treating sources. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) (citations omitted) ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires."). It cannot be said that the ALJ did not subject the non-examining sources' opinions to scrutiny simply because he adopted their opinions but discredited the treating source opinions. The ALJ found that Dr. Balunas's

and Dr. Kuiper's opinions are more consistent with the record than the opinions of the treating sources. Kepke also argues that a non-examining doctor's opinion is entitled to little weight if contrary to a treating source's opinion. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). This argument also fails because once the ALJ properly discredited the treating source opinions, the treating source rule could no longer reasonably apply. *See Price*, 342 Fed.App'x. at 177 ("Although the opinion of a treating physician is given more weight, this Court has recognized that consultative opinions may be credited where they are supported by the record."). The Court also finds irrelevant Kepke's argument that Dr. Balunas's and Dr. Kuiper's opinions are in the form of a questionnaire, similar to the checklist format of Dr. Chapman's treating source opinion, which the ALJ took into account in discrediting Dr. Chapman's opinion. The checklist format was one of many factors the ALJ considered in finding Dr. Chapman's opinion unreliable, and unlike Dr. Chapman's opinion, the ALJ found Dr. Balunas's and Dr. Kuiper's opinions to be consistent with the record.

As the Commissioner argues, "the ALJ's evaluation of [these] opinions was well within the zone of reasonable choice permitted by the substantial evidence standard of review." Appellee Br. at 27; *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The ALJ did not reversibly err in relying on the opinions of the non-examining state agency doctors.

**D. Kepke's Severe Thyroid Disease**. Kepke next argues that the ALJ erred by failing to list her thyroid disease as a severe impairment, in accordance with the mandates of *Drummond v. Commissioner of Social Security* and Acquiescence Ruling ("AR") 98-4(6). In *Drummond*, this Court held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent

ALJ is bound by the findings of a previous ALJ." 126 F.3d 837, 842 (6th Cir. 1997). After *Drummond*, the Social Security Administration promulgated AR 98-4(6), which applies to Social Security claimants residing in Kentucky, Michigan, Ohio or Tennessee, and provides the following:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6).

The prior ALJ decision listed Kepke's thyroid disease as a severe impairment. Kepke avers that the ALJ reversibly erred by failing to also list her thyroid disease as a severe impairment in the second step of the sequential disability evaluation process. Kepke's argument is invalid. The ALJ found that Kepke has several other severe impairments. Therefore, Kepke cleared step two of the sequential analysis, requiring the ALJ to consider all of Kepke's impairments (severe and non-severe) in the remaining steps. *See Anthony v. Astrue*, 266 Fed.App'x. 451, 457 (6th Cir. 2008) (finding that the ALJ's failure to list a severe impairment was "legally irrelevant" because the ALJ found other severe impairments, allowing the claimant to clear step two, and causing the ALJ to consider all of his impairments in the remaining steps); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that failure to find one of claimant's cervical conditions severe could not constitute

16

reversible error because the Secretary found other severe impairments, allowing the Secretary to later consider the condition in crafting the RFC).

Kepke's contention that the ALJ failed to consider her thyroid disease at all is not supported by the record. The record shows that the ALJ considered Kepke's thyroid disease because the ALJ relied on the opinion of Dr. Kuiper, who adopted the prior ALJ's RFC, which listed Kepke's thyroid disease as a severe impairment. *See e.g., Coldiron v. Comm'r of Soc. Sec.*, 391 Fed.App'x. 435, 443 (6th Cir. 2010) (citations omitted) ("Every medical opinion that the ALJ evaluated acknowledged Coldiron's obesity. Thus, by utilizing the opinions of these physicians in fashioning Coldiron's RFC, the ALJ incorporated the effect that obesity has on the claimant's ability to work into the RFC he constructed."). Therefore, the ALJ did not reversibly err by failing to list Kepke's thyroid disease as a severe impairment.

**E. Flawed Hypotheticals**. Kepke avers that the ALJ's hypotheticals did not adequately convey her limitations to the VE, and that as such, the ALJ reversibly erred in relying on the VE's testimony. *See Anderson v. Comm'r of Soc. Sec.*, 406 Fed.App'x. 32, 35 (6th Cir. 2010) (citation omitted) ("As long as the VE's testimony is in response to an accurate hypothetical, the ALJ may rely on the VE's testimony to find that the claimant is able to perform a significant number of jobs.").

Kepke relies on *Ealy v. Commissioner of Social Security*, a case in which the Court found the ALJ's hypothetical providing for a limitation to "simple, repetitive tasks" did not properly convey the claimant's limitations. 594 F.3d 504, 516-17 (6th Cir. 2010). *Ealy* is distinguishable from Kepke's case, however, because there, one of the claimant's doctors specifically limited his

ability to sustain concentration to "simple repetitive tasks [for] '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id*. at 516. Kepke, however, has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed.App'x. 426, 436-37 (6th Cir. 2014) (distinguishing *Ealy* on the basis that Smith-Johnson's moderate limitations in concentration, persistence and pace were conveyed by the ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" because Smith-Johnson's doctor "did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"). Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace. Therefore, Kepke's reliance on *Ealy* is misguided.

It should be noted that the ALJ's hypothetical also contained limitations for a low stress job that does not require any complex written or verbal communication, calls for no more than occasional decision making, and calls for no more than occasional changes in the work setting. Kepke fails to show that her limitations were not properly presented to the VE for consideration.

Kepke next contends that the hypothetical improperly limited her to avoiding "even moderate" exposure to poorly ventilated areas, while the RFC limited her to avoiding all exposure to poorly ventilated areas. Though the hypothetical question must accurately describe the claimant, there is no requirement that it must match the language of the RFC verbatim. *See Brock v. Comm'r of Soc. Sec.*, 368 Fed.App'x. 622, 626 (6th Cir. 2010) (citation omitted)

("Further, a hypothetical question maybe incomplete, yet still accurately portray a claimant's limitations."). In response to the ALJ's second hypothetical, the VE reduced the available jobs to those that have "clean environments." R. 8-2 (ALJ Hearing Transcript at 75) (Page ID #109). It defies logic to assume that the VE believed that a poorly ventilated area constituted a "clean environment." The VE's provision of jobs in clean environments shows that the VE properly accounted for Kepke's need to avoid all exposure to poorly ventilated areas. Even though the ALJ's characterization was imprecise, the VE's testimony sufficiently addressed Kepke's limitation.

Therefore, the ALJ's characterization of the limitation does not constitute grounds for reversal. Because Kepke has not shown that more precise wording in the hypothetical would have resulted in a finding of disability, the ALJ's error was immaterial and harmless. *See Potter v. Comm'r of Soc. Sec.*, 223 Fed.App'x. 458, 463-64 (6th Cir. 2007) (holding that even though the record showed claimant did not obtain a regular high school diploma and had only third to fifth grade level language and math skills, the ALJ's hypothetical asking the VE to assume a person "with a[n] apparently 12th grade education" constituted harmless error because reference to the claimant's education "was not material to the ultimate conclusion that she was not disabled").

Finally, Kepke argues that the ALJ failed to provide specifics (in the RFC and hypotheticals) as to the frequency of her need to alternate between sitting and standing. *See* Soc. Sec. Admin., SSR 96–9p, at *7 (1996) ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). Because Kepke failed to

19

probe this alleged deficiency at the ALJ hearing, she forfeited this argument. *See Sims v. Comm'r of Soc. Sec.*, 406 Fed.App'x. 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.").

The slight error attributable to the ALJ's hypotheticals is not reversible error, and the VE properly took Kepke's limitations into account. Therefore, the VE's opinion constitutes substantial evidence that supports the ALJ's finding in step five of the disability analysis. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) ("This court has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work.").

**F. Kepke's Severe Cervical Central Canal Stenosis, Nerve Root Compression, and Carpal Tunnel Syndrome**. Kepke contends that the ALJ committed reversible legal error by failing to evaluate her severe cervical central canal stenosis and nerve root compression, in combination with her carpal tunnel syndrome.

Kepke's claim that the ALJ failed to evaluate her November 10, 2010 cervical MRI is belied by the fact that the ALJ did not merely mention the MRI, but provided a full description of it. As the magistrate judge found, Kepke "fails to cite evidence of any resultant limitations that are not already accounted for in the RFC." R. 27 (Report & Recommendation at 29) (Page

ID #1085). Kepke also argues that the MRI findings, coupled with her own reports regarding her limitations, provide an objective basis for finding restrictions in fingering, repetitive hand-finger action, bilateral manual dexterity, handling, grasping, reaching, and that her cervical condition "*would* affect her ability to turn her head left, right, up, down, or even hold it in a static position." Appellant Br. at 25, 35 (emphasis added).

This argument is based on no more than Kepke's own speculation of what limitations her cervical condition could or would create. It is important to note that the MRI was ordered by treating source, Dr. Pinson, yet Kepke provides no report from Dr. Pinson or any other doctor that states she has the specific limitations she speculates would result from her cervical condition. Moreover, Kepke has presented no evidence that the ALJ's restrictive RFC does not already account for any limitations that may result from her cervical condition alone or in combination with other impairments.

Similarly, Kepke provides no support for her conclusory argument that the combined effect of her cervical condition and her alleged carpal tunnel syndrome "generates far greater restrictions than those imposed by sedentary work." Appellant Br. at 47. The documents Kepke offers to show that she has carpal tunnel syndrome are dated 2004, prior to her alleged beginning date of disability. The record does not contain evidence of carpal tunnel syndrome during the relevant time period. Furthermore, Kepke's carpal tunnel syndrome limited her ability to "repeatedly lift over 10 pounds or push/pull 15 pounds of force." Appellee Br. at 35. The RFC accommodates this because it provides that she can perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), which limit such work to that which does not involve

lifting more than 10 pounds at a time.  Kepke fails to show that the ALJ erred in evaluating these conditions/impairments or that she was prejudiced on the merits.

**G. Kepke's Ability to Work as a Surveillance System Monitor**.  In asserting that the record demonstrates she cannot work as a surveillance-system monitor, Kepke points to the ALJ's failure to question the VE regarding the conflict between the VE's testimony and the General Educational Development (GED) requirements for the surveillance-system monitor position as described in the Dictionary of Occupational Titles ("DOT").

This argument fails for two reasons.  First, "nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge."  *Ledford v. Astrue*, 311 Fed.App'x. 746, 757 (6th Cir. 2008). At the hearing, Kepke did not raise this conflict and the ALJ was under no duty to investigate any further than he did.  Second, "neither the testimony of a vocational expert nor the occupational descriptions in the [DOT] necessarily trumps the other." *Ledford*, 311 Fed.App'x. at 757.  The Social Security regulations did not require the ALJ or the VE to adopt the DOT's characterization of occupations in reviewing Kepke's case.  *Id.* (citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003)).

Kepke fails to cite to any support for her assertion that her education level, and inability to do basic math, read instructions for assembling models, and manage funds "preclude work as a surveillance monitor no matter what standard you use."  Appellant Br. at 50.  Moreover, the hearing transcript shows that the VE took into account Kepke's education and limitation to

22

simple, unskilled work. Kepke's contention that her severe attention deficit disorder precludes her from working as a surveillance-system monitor is also not well taken. The fact that she has severe ADHD does not necessarily mean that she has the corresponding limitations that are preclusive of this job (such as likely being off task 11% to 25% of the workday, as described by the VE). *See Thomas v. Comm'r of Soc. Sec. Admin.*, 480 Fed.App'x. 462, 463 (9th Cir.2012) (internal quotations and citation omitted) ("A severe impairment need not necessarily 'correspond to limitations on a claimant's ability to perform basic work activities' . . .") (quoting *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009); *Davis-Grimplin v. Comm'r of Soc. Sec. Admin.*, 556 Fed.App'x. 858, 862 (11th Cir. 2014) ("A 'severe' impairment does not necessarily indicate that a person has a disability qualifying her for benefits because it is possible that, even with the severe impairment, that person could still perform the work pertaining to her job after taking into consideration other vocational factors.").

In support of her argument to the ALJ, Kepke relied on the opinion of her treating primary care physician, Dr. Pinson, who stated that she would likely be off task 25% or more of the workday. This opinion was, as explained earlier, properly accorded little weight. An impairment can manifest itself in different ways, and without credible objective evidence that supports the existence of certain limitations, the ALJ cannot assume that those particular limitations inherently derive from the claimant's impairment. *See e.g., Sullivan v. Sebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of the criteria, no matter how severe, does not qualify."). Kepke failed to satisfy her burden of showing a preclusive limitation. *See Galliher v. Sec'y of Health & Human Servs*, 991 F.2d 794, No. 92-1505, 1993

WL 101446, at *4 (6th Cir. Apr. 6, 1993) (unpublished opinion) (". . . [A] claimant must show that he has functional limitations resulting from his mental disorder that are inconsistent with the ability to engage in substantial, gainful activity.").

The VE's testimony provided substantial evidence for the ALJ's conclusion that Kepke can work as a surveillance-system monitor despite her educational limitations and other impairments. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess . . . ."). The ALJ did not commit error in relying on the VE's testimony in this regard.

**H. Assessment of Kepke's Credibility**. Kepke argues that the ALJ failed to provide "good reasons" supported by substantial evidence for rejecting her credibility. *See* 20 C.F.R. § 404.1529.

The Court has stated that "[i]t is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of claimant . . . [though] such determinations must find support in the record." *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *see also Schmiedebusch v. Comm'r of Soc. Sec.*, 536 Fed.App'x. 637, 649 (6th Cir. 2013) (internal quotation marks and citation omitted) ("We accord an ALJ's credibility determinations great weight and deference, and are limited to evaluating whether the ALJ's explanations for partially discrediting a claimant's testimony are reasonable and supported by substantial evidence in the record.").

Kepke argues that the ALJ improperly discredited her for missing or canceling health appointments, without considering whether there was a reasonable explanation, such as lack of funds or transportation. *See* SSR 96-7 (An ALJ should determine "whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner"). Kepke cites to *Boulis-Gosch v. Commissioner* for the proposition that a claimant's failure to seek treatment for a mental impairment should not be a determinative factor in a credibility assessment. 451 Fed.App'x. 488, 493 (6th Cir. 2011). However, the ALJ's finding that Kepke's credibility was damaged was based on several factors, with no one factor being determinative. For instance, the ALJ found that Kepke provided inconsistent information and received only routine and/or conservative treatment for the allegedly disabling impairments. *See Lester v. Soc. Sec. Admin.*, 596 Fed.App'x. 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment); *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment.").

Furthermore, the ALJ notes elsewhere in his decision that (1) an MRI of Kepke's lumbar spine revealed only mild to moderate findings, (2) Kepke's impairments have not required hospitalizations or even emergency room visits, and (3) Kepke is supposed to use a cane to assist with walking "but alleged that she already looks old and does not want to use it until she has to." R. 8-2 (ALJ Decision at 27-80) (Page ID #61). These facts taken together constitute substantial evidence on which the ALJ was able to rely in discrediting Kepke's claims about the limiting

effects of her symptoms.  *See Steagall v. Comm'r of Soc. Sec.*, 596 Fed.App'x. 377, 381 (6th Cir. 2015) (internal quotations and citation omitted) ("An ALJ may discount a claimant's credibility when the ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). The ALJ did not err in assessing Kepke's credibility.

**I. Motion for Remand**.  Finally, Kepke contends that the district court erred by denying her motion for a sentence six remand of the case to the ALJ for consideration of documents that pertain to her alleged carpal tunnel syndrome.  Sentence six of 42 U.S.C. § 405(g) permits a reviewing court to remand a case to the Commissioner for review of additional evidence "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir.2010) (citation omitted).  Evidence is "new" if it was not available to the claimant or did not exist at the time of the administrative proceeding, and "material" if there is a reasonable probability that a different disposition of the claim would have been reached if the evidence had been presented initially.  *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001) (citations omitted)). "Good cause" can be shown only by demonstrating a reasonable justification for failing to present the evidence at the administrative hearing. *Id.*

The evidence Kepke offers post administrative hearing is not "new" because it was in existence at the time of the hearing[1] and Kepke has not shown that the documents were unavailable to her.  Kepke's conclusory statement that "such evidence would have dictated a different conclusion at the hearing level" is not sufficient to show a reasonable probability that

---

[1]In fact, these records (dated 2005 and earlier) were available not only prior to the second administrative hearing, but also prior to the first.

the new evidence would have dictated a different outcome if presented to the ALJ. R. 16 (M. for Remand at 4) (Page ID #981). Kepke has also not shown a reasonable justification for failing to produce the documents at the administrative hearing. The ALJ kept the record open for 14 days in response to Kepke's counsel's request for additional time to submit these records. Kepke's attorney then "made a strategic decision that he did not need the record left open for the submission of documents" if the ALJ could expedite his opinion. R. 27 (Report & Recommendation at 37) (Page ID #1093). This strategy failed, as the ALJ ultimately issued the decision after Kepke's date of last insurance. Kepke argues that if she had known the decision would be issued after the date of last insurance (*i.e.*, if she had known her attorney's strategy would fail), she would have requested more time to submit the additional records. This argument is unpersuasive. Kepke's failed legal strategy cannot constitute a reasonable justification for her failure to timely present this evidence. Remand pursuant to sentence six is therefore not warranted in this case.

**Conclusion**. For the foregoing reasons, we **AFFIRM** the judgment of the district court upholding the Commissioner's decision.