**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0378n.06

Case No. 16-4190

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**FILED**

Jun 27, 2017

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CORINNA BURTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, CLAY, and McKEAGUE, Circuit Judges.

**SILER**, Circuit Judge. Corinna Burton appeals from the district court's order affirming the denial of her application for supplemental security income (SSI). An administrative law judge (ALJ) with the Social Security Administration denied Burton's application for SSI on the basis that Burton was not disabled as defined by the Social Security Act. Burton asserts that the ALJ failed to weigh evidence consistent with the applicable regulations and caselaw. We **affirm** the judgment upholding the denial of SSI because the ALJ did not commit legal error and substantial evidence supports the findings that Burton is not disabled under the Social Security Act.

I

Burton alleges that she became disabled in January 2013, at the age of 49. In February 2013, she applied for SSI under Title II of the Social Security Act, alleging at the outset that she was disabled due to diabetes and high blood pressure. She has since refined her disability claims

as attributable to a combination of physical and mental impairments. She reported completion of one year of college and employment as a nurse's aide until 2001.

In 2014, an ALJ conducted a hearing on the application, which Burton attended via videoconference. Burton testified that she last worked in 2000 or 2001 as a nursing assistant, but stopped working due to depression, anxiety, high blood pressure, diabetes, retinopathy, neuropathy, and fatigue. Burton represented that she experiences constant numbness and "stinging" in both feet that travels up her calves and legs "like a sock." Burton reported that she also experiences a "numbing sensation" in both hands akin to "knots inside of [her] hands." She estimated that she could stand on her feet for two to three hours in an eight-hour workday. She also testified that she suffers from anxiety and depression, necessitating mental-health counseling and prescriptions for Zoloft and Xanax.

The administrative record includes treating-source records from Dr. Kevin Malloy, Burton's primary-care physician, and Dr. Kenneth Tepe, her psychiatrist.[1] Dr. Malloy diagnosed Burton with diabetes mellitus and neuropathy, and he opined that Burton had limitations precluding her from standing or walking for more than four hours during the workday. Dr. Malloy noted that Burton displays "stocking hypoesthesia." Dr. Malloy observed that while Burton has no diabetic neuropathy in her hands, she experiences "pain on repeated use of hands with irritation to palmar tendons." In addition, Dr. Tepe diagnosed Burton with major depression (recurrent), noting that her impaired mental state hampers normal social and occupational functioning. Dr. Tepe opined that Burton had "moderate ability" (defined as the capacity to function from one-third to two-thirds of the day) to function independently; "minimal ability" (defined as the capacity to function from zero to one-third of the day) to deal with the

---

[1]No party disputes that the reports from Dr. Malloy and Dr. Tepe constitute treating-source opinions as defined under the Social Security Act.

public and co-workers; and no ability to behave in an emotionally stable or predictable manner in social situations.

The administrative record also includes opinions from three state-agency physicians and three mental health professionals. Based on Dr. Phillip Swedberg's review, Burton could stand on either leg without difficulty and her range of motion in both arms and legs was "completely normal." Dr. Swedberg concluded that Burton could perform "a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting[,] and carrying heavy objects." Dr. Leon Hughes similarly determined that Burton could perform medium work: lifting no more than 50 pounds at a time (with frequent lifting up to 25 pounds) and standing or walking (off and on) for six hours in an eight-hour workday. Dr. Eli Perencevich likewise opined that Burton could perform light work (lifting no more than 20 pounds at a time with 10 pounds frequently) and could stand or walk for six hours in an eight-hour workday. As a consulting psychologist, David Chiappone observed that Burton did not show signs of anxiety and appeared only mildly depressed, diagnosing her with panic disorder without agoraphobia and depressive disorder not otherwise specified. Another psychologist, Dr. Karen Steiger, opined that Burton could perform routine, static tasks and that any changes would need explanation or demonstration; that she could relate to others in a superficial manner; that she did not require more than routine supervision; and that she could adapt to change in a stable work setting. Yet another state-agency psychologist, Frank Orosz, concurred with Dr. Steiger's assessment.

In 2014, the ALJ concluded that Burton "has not been under a disability within the meaning of the Social Security Act since" the filing date of her application. The ALJ found that, notwithstanding her diabetes mellitus and neuropathy, Burton could stand or walk for six hours in an eight-hour day, qualifying her for "light" work as defined by the Social Security Act. *See*

20 C.F.R. § 416.967(b). The ALJ also determined that, despite suffering from major depression, Burton could perform routine repetitive tasks with occasional changes in the type of work or setting, so long as the work would not require contact with the public or more than occasional contact with coworkers and supervisors. According to the ALJ, those findings demonstrated that Burton could pursue a significant number of jobs. The Social Security Administration's Appeals Council denied Burton's request for review.

In 2015, Burton sued the Commissioner of Social Security, seeking review of the agency's final decision. The district court concluded that substantial evidence supported the ALJ's findings and affirmed the Commissioner. It observed that the ALJ gave "some weight" to the opinions of Dr. Tepe and Dr. Malloy, characterizing Burton's arguments as "merely disagreements" with how evidence was weighed.

## II

We review de novo a district court's decision on social-security lawsuits. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citation omitted). Review of the underlying governmental agency's decision "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g).

## III

Burton argues that the opinions of her treating doctors should control, and, failing that, she asserts that those opinions should be afforded the greatest weight among the record evidence. By failing to follow regulatory guidance and caselaw on the proper assessment of medical

evidence, Burton maintains that the agency's decision is both legally erroneous and not supported by substantial evidence.

Burton presses that she had a five-year treatment history with Dr. Malloy at the time he gave his opinion, explaining that his opinion on her inability to walk or stand for more than four hours in an eight-hour workday should be dispositive. Burton notes that the ALJ found no fault with Dr. Malloy's diagnostic testing or techniques. Burton contends that Dr. Malloy's opinion deserves the status of controlling (or at least great) evidentiary weight because it was supported by the results of medically acceptable clinical and laboratory techniques not inconsistent with other record evidence. According to Burton, giving "some weight" to that opinion is erroneous. To the extent other opinions offered different takes on the level of activity that she could perform, Burton maintains that those divergences are *de minimis* and not inconsistent with Dr. Malloy's treating-source opinion.

Burton further argues that the ALJ failed to give proper controlling weight to Dr. Tepe's opinion. Dr. Tepe, Burton urges, provided adequate treatment as a psychiatrist who typically treats mental health patients. Burton notes that the ALJ erred in omitting any discussion of whether Dr. Tepe qualifies as a treating professional. She points out that Dr. Tepe's diagnoses of anxiety and depression were confirmed by the other mental health professionals. Burton impugns the ALJ's analysis as tantamount to second guessing Dr. Tepe, supplanting a treatment professional's assessments in favor of personal views. Burton also faults the Appeals Council for failing to consider or comment on a supplemental document prepared by Dr. Tepe, disclaiming any reliance on Burton's self-assessment when rendering the opinion.

We conclude that the ALJ did not err in applying the law and that substantial evidence supports the final decision denying SSI. The treating-source rule is one of the standards that the

Social Security Administration imposes on the consideration of medical-source evidence. *See* 20 C.F.R. § 404.1527. ALJs must give treating-source opinions controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ gives the treating-source opinion something less than controlling weight, "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (internal quotation marks omitted) (citing *Wilson*, 378 F.3d at 544). The ALJ provided good reasons, supported by substantial evidence, for determining that the treating-source opinions are not entitled to controlling weight.

Substantial evidence shows ample consistency among the state-agency opinions, all of which depart from Dr. Malloy's and many of which reflect that Burton had the ability to perform moderate work alongside standing or walking for six hours of the eight-hour workday. Although the ALJ did not fault Dr. Malloy's testing, no physical examination supported abnormality in stance or gait. Dr. Malloy's records since 2012 do not demonstrate a precipitous decline in physical functioning or dependency on greater medication or treatment. *See Cohen v. Sec. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The ALJ, however, is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."). His physical-examination remarks have not wavered since 2012, and available evidence calls into question the 2013 overall assessment of an inability to walk or

stand beyond four hours during an eight-hour workday. The ALJ articulated good reasons for declining to afford controlling weight to Dr. Malloy's opinion.

The ALJ similarly identified definitive inconsistencies between the opinions of Dr. Tepe and the state-agency professionals. Dr. Tepe took the extreme position of opining that Burton had "no ability" to interact in social settings, even though contemporaneous notes reflected stable functioning. That opinion deviates from other more moderate positions concluding that Burton had only "some difficulty" in mental functioning. Dr. Tepe's opinion also stands apart from others, as the ALJ determined, because of overreliance on Burton's self-assessments. Even if we consider Burton's supplemental report from Dr. Tepe as proper evidence, it does not negate findings of undue dependency on subjective self-assessments.

The ALJ did not err in weighing the evidence in favor of denying the application for SSI. "[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If the treating-source opinion is deemed not to control, the agency may review other opinions, inquiring into treatment dynamics, specialization saliency, evidentiary consistency, and supportability. *See id.* (citing 20 C.F.R. § 404.1527(c)). Other factors "which tend to support or contradict the medical opinion" may be considered as well. § 404.1527(c)(6). Taking the treating-source opinions as persuading but not controlling, evidence bears consistent diagnoses and prognoses among the state-agency professionals. Those opinions also overlap with the duly considered treating-source opinions. Without dispute those opinions signify the relevant medical specialties at issue and are representative of the available information on Burton's physical and mental health. Burton does not challenge internal indicia of reliability, just the outcome derived from a cogent assessment of the record. *See, e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016)

("[T]he ALJ gave good reasons for discounting Dr. Chapman's opinion, and satisfied the mandates of 20 C.F.R. § 404.1527 by considering some of the listed factors."). The ALJ did not reject the opinions of Dr. Malloy or Dr. Tepe; it afforded each opinion concordant weight with the extant record to arrive at a decision versed in substantial evidence.

Burton cites *Gayheart* to support her contentions, but that case does not compel a different result because the record here is supportive of the ALJ's application of law and is consistent with the findings. *See Gayheart*, 710 F.3d at 379. *Gayheart* reversed and remanded because the ALJ did not provide good reasons for deviating from treating-source opinions when other record evidence had "equivalent inconsistencies." *Id.* *Gayheart* is inapposite because the evidence is substantial that Dr. Malloy and Dr. Tepe present opinions breaking from otherwise harmonious evidence. The ALJ thus did not err in applying the law and substantial evidence supports the decision denying benefits.

**AFFIRMED.**