NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0637n.06

Case No. 17-5561

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARY K. MASTERS, | ) | **FILED**<br>Nov 17, 2017<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: NORRIS, ROGERS, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** The Commissioner of Social Security denied Mary K. Masters' ("Masters") application for Supplemental Security Income ("SSI") benefits. Pursuant to 42 U.S.C. § 405(g), Masters sought judicial review of that decision in the district court, which affirmed the denial of benefits. Masters now appeals, asserting primarily that the overwhelming weight of the evidence shows that she is totally disabled and that the administrative law judge ("ALJ") failed to properly apply Circuit precedent. We **AFFIRM**.

I.

On October 16, 2012, Masters filed an application for SSI, alleging a disability with an onset date of May 10, 2012. Her claim was denied initially on April 4, 2013, and upon

reconsideration on July 29, 2013. Masters requested a hearing, which was conducted on November 4, 2014 before an ALJ.

At the hearing, Masters testified that she has a college degree, that she previously worked in a classroom, retail, restaurants, in housekeeping, and as a certified nurse assistant. She testified that she experiences debilitating migraines, has interstitial cystitis for which she has surgery every six months, that she gets injections in her knees, has joint dysfunction in both of her hips, and has been diagnosed with fibromyalgia, arthritis, chronic fatigue syndrome, depression, and anxiety. She testified that her migraines typically last two to three days and occur frequently. Masters testified that when she takes medication for inflammation and pain, such as Voltaren or Neurontin, the medications are typically effective, but on bad days, she is unable to walk. At times, Masters experiences panic attacks, and she has been prescribed some medications for both anxiety and depression. She testified that she has difficulty sleeping, but is able to take care of her own personal hygiene and bathing, care for her children, attend church, and perform other daily activities.

Jane Hull, a vocational expert ("VE") also testified. At the hearing, the ALJ asked Hull a series of hypothetical questions about an individual around Masters' age and education with her past jobs. The ALJ presented Hull with a hypothetical of an individual who is "limited to lifting, carrying, pushing, pulling" less than 10 pounds frequently and 10 pounds occasionally, who could sit for a total of six hours in an eight hour day, stand and walk for a total of two hours in an eight hour day, who could "never climb ramps and stairs or ladders, ropes, and scaffolds," who could "occasionally stoop . . . [n]ever kneel, crouch, or crawl," and had other environmental and mental limitations. With those limitations, Hull testified that unskilled office clerk jobs or other sedentary work would be available in the national economy. When the ALJ added a hypothetical

that the individual would in addition be "off task 10 percent of every day in addition to normal breaks and would miss more than two days of work per month," Hull testified that there would be no work in the national economy.

The medical evidence in the record provides additional context to Masters' medical history. Treatment notes show that Masters visited a variety of providers between 2012 and 2015. In 2012, Masters was receiving treatment for headaches, fibromyalgia, overactive bladder, and depression. In the second half of 2012, Masters took medication for her overactive bladder condition, depression, headaches, and fibromyalgia. Masters visited a chiropractor five times between late 2012 and early 2013 for hip and knee pain. In March 2013, after going to the hospital for bladder pain, Masters was diagnosed with interstitial cystitis and began a course of medications applied directly to her bladder. There is nothing in the record to show that Masters sought treatment in late 2013 or in 2014.

In March 2013, Naushad Haziq, M.D. examined Masters in connection with her SSI application. Dr. Haziq reviewed Masters' medical records and conducted an examination, concluding that she "has normal gait and station"; that she "is able to stand unassisted and is able to rise from a seat and step up and down from the examination table"; that she could follow instructions, appeared "comfortable while seated"; and other than appearing "pale, lethargic and somewhat depressed," was in "no acute physical distress." His impression included that Masters had generalized lethargy, generalized pain, "intermittent neck and low back pain, possible degenerative disc disease, possibly secondary to fibromyalgia," a history of severe headaches, and a "longstanding history of anxiety and depression requiring medication." In October 2014, treating physician Arden Acob, M.D. opined that Masters' migraines render her unable to work; however, no treatment notes are included in the record.

Masters also had a consultative examination with Timothy L. Baggs, Psy.D., who concluded that Masters' mental health status likely included diagnoses of major depressive disorder; mild, dysthymic disorder; and anxiety disorder. State agency psychologists Alex Guerrero, M.D. and Robert Hodes, Ph.D. reviewed the evidence and opined that Masters' depression and anxiety would not significantly limit basic work activities.

On January 6, 2015, the ALJ issued a decision determining that Masters was not disabled for purposes of the Act. Following the five-step sequential analysis laid out in 20 C.F.R. § 416.920(a), the ALJ ultimately concluded that, despite limitations, there remained jobs in the national economy Masters is capable of performing. At step one, the ALJ determined that Masters had not engaged in substantial gainful activity since the benefits application date. At step two, the ALJ found that Masters had severe impairments, including fibromyalgia, chronic fatigue, osteoarthritis of the knees, migraine headaches, major depressive disorder, and general anxiety disorder. The ALJ indicated that the record did not substantiate severe impairment based on her alleged neck, low back, and hip pain; interstitial cystitis; or chronic vitamin B12 deficiency. Specifically as to the cystitis, the ALJ concluded that the evidence showed that Masters did not report continuing issues after undergoing a cystoscopy. At step three, the ALJ considered that the severity of Masters' impairments did not appear to prevent her from an array of daily, regular activities, including caring for her children, caring for her personal hygiene, taking medication, completing housework, running errands, driving, preparing meals, attending church, and other activities. As to Masters' mental impairments, the ALJ found that she "has only a mild restriction with activities of daily living and no more than moderate limitations with social functioning, concentration, persistence, and pace."

At step four, the ALJ determined that Masters was not totally disabled for purposes of the Act, concluding that she has a residual functional capacity ("RFC") to perform light work with certain restrictions.

The ALJ attributed great weight to Dr. Haziq's physical exam, concluding that his findings were "substantially consistent" with other evidence in the record. Further weight was afforded to Dr. Baggs' consultative mental health exam for its consistency with Masters' treatment and lifestyle. The ALJ gave partial weight to the physical function evaluation, adding some limits and mental restrictions based on Dr. Baggs' report and reports of treating physicians. However, the ALJ gave little weight to treating physician Dr. Acob's opinion, notably because he supplied no treatment records for the relevant period yet claimed Masters had been disabled by migraines since 2007. As to the lay testimony, the ALJ afforded Masters' father, Lonnie Owens, "preponderant – though less than determinative" weight.[1]

The ALJ accepted the VE's testimony as to Masters' inability to perform past relevant work under 20 C.F.R. § 416.965 and the limitations consistent with the ALJ's evaluation of the record as a whole. The ALJ concluded that, "given [Masters'] age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." Thus, the ALJ issued a decision concluding that Masters was not disabled, as defined in the Act.

On December 19, 2015, the Appeals Council denied Masters' request for review. Masters then filed this suit in district court, seeking review of the denial of benefits. The district court affirmed on March 31, 2017, and Masters timely appealed.

---

[1] Masters' father submitted a "Third Party Function Report" that is included in the record.

II.

This Court reviews de novo an appeal from the district court concerning a denial of benefits. *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 957 (6th Cir. 2015). It is the plaintiff's burden to prove a disability within the meaning of the regulations. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016). The scope of our review of the ALJ decision "is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is 'substantial evidence' in the record to support the findings." *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 174 (6th Cir. 2009). "The substantial-evidence standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). "We, however, will not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Stankoski v. Astrue*, 532 F. App'x 614, 618 (6th Cir. 2013) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). The Court may affirm even if the record supports differing conclusions. *Hernandez*, 644 F. App'x at 473.

The Social Security Administration follows a five-step sequential process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a). Masters first argues that the ALJ's determination that she is not totally disabled is not supported by substantial evidence because the ALJ did not properly weigh the opinions of Masters' treating and examining physicians. She then argues that the ALJ erred by applying the incorrect legal standards for fibromyalgia and pain. Masters also contends that the ALJ improperly discredited lay testimony and that of the VE. Finally, Masters contends that benefits should otherwise be granted because the record shows that she has interstitial cystitis. Based on her disability, Masters argues that the Court

should grant benefits or alternatively reverse and remand with instructions for the ALJ to follow this Circuit's standards for fibromyalgia and pain.

A.

Masters first contends that substantial evidence supports a finding that she is totally disabled. Specifically, she points to the medical diagnoses and opinions of her treating physicians, which she alleges were disregarded for the opinions of non-treating physicians. In her brief, Masters implies that the ALJ disregarded her treating physicians' opinions completely in favor of those of the examining physicians, but that is not the case. The only treating physician opinion expressly disregarded by the ALJ was Dr. Acob's. Masters points to no other treating physicians' opinion that was disregarded by the ALJ.

In formulating an RFC finding, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)). When an ALJ "give[s] a treating source's opinion less than controlling weight, []he must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physicians opinion and the reasons for that weight." *Id.*

Like the district court, this Court is not "persuaded that more deference was due than was provided." *See Masters v. Berryhill*, No. 6:16-cv-00031-JMH, 2017 WL 1227927, at *3 (E.D.

Ky. Mar. 31, 2017). The ALJ considered the medical opinions within the record, giving great weight to Dr. Haziq's and Dr. Bagg's opinions, finding them consistent with the other medical evidence in the record. While the ALJ gave little weight to the opinion of Dr. Acob, that determination was accompanied by "good reasons" in accordance with the standard for discounting treating physician opinion. The ALJ noted that Dr. Acob both sent in an evaluation request stating that he had no treatment records for the relevant time period, while also sending in an exhibit stating that Masters had been disabled by migraines since 2007. Noting this inconsistency and lack of medical evidence in support of his findings, the ALJ reasonably found that Dr. Acob's "sweeping claim" was not supported by the remaining record.

While the ALJ certainly could have afforded weight to Dr. Acob's opinion, this Court defers to the determination that Dr. Acob's opinion was inconsistent with the record and unsupported by evidence.

B.

Next, Masters contends that the ALJ failed to apply the correct legal standards for fibromyalgia and pain. The ALJ found Masters' fibromyalgia, osteoarthritis of the knees, and migraine headaches to be "severe impairments" under 20 C.F.R. § 416.920(c), but concluded that "the objective record did not similarly substantiate the claimant's alleged neck, low back, or hip pain . . . ." (R. 10-1 ALJ Decision, Page ID # 102.) The ALJ considered Masters' complaints of neck and back pain, but also stated that "scans evidence no indication of any abnormality . . . and she has full ranges of motion in all physical exams." (*Id.*) Further, the ALJ determined that "the claimant exhibited normal function and range of motion in the hips during consultative examination . . . consistent with negative x-rays." (*Id.*)

Masters relies heavily on this Court's opinion in *Rogers v. Comm'r of Soc. Sec*, 486 F.3d 234 (6th Cir. 2007), for her contention that the ALJ did not adhere to the proper legal standards in considering whether her fibromyalgia precluded her from performing work. However, *Rogers* is inapposite because the ALJ there disregarded treating physicians' diagnoses and concluded that the claimant's fibromyalgia was non-severe. *Id.* at 243. Here, the ALJ considered the impairment as diagnosed and found that Masters' fibromyalgia was severe. The ALJ concluded, however, that the functional limitations Masters' fibromyalgia presented did not entirely preclude Masters from jobs in the national economy. A finding that a claimant suffers from fibromyalgia is not alone sufficient to support a disability claim. *See Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) ("But a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits.").

Masters also contends that the ALJ failed to apply the appropriate factors in assessing her pain in the determination of her RFC. The RFC is "the most [a claimant] can still do despite [] limitations," 20 C.F.R. § 416.945, and is a determination reserved to the Commissioner, *id.* § 416.927(d)(2). Limitations involving generalized pain may be "severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In considering when a claimant's pain limitations are severe enough to constitute a disability entitling a claimant to benefits, we consider a number of factors to evaluate a plaintiff's symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). However, the ALJ here considered the factors in *Felisky* and in 20 C.F.R. § 416.929(c)(3) as it relates to the evidence in this case. The ALJ detailed the evidence regarding Masters' pain levels, considered her day-to-day activities, the medication taken to alleviate her pain, and concluded that her pain limited her function, but not so much that she is incapable of performing work in the national economy. Unlike the ALJ in

*Felisky*, the ALJ in this case provided a detailed analysis of the impact of Masters' pain on her RFC, and that analysis was supported by substantial evidence.

C.

Masters further argues that the ALJ applied the incorrect legal standards in his consideration of lay testimony and his assessment of the VE.

As to the lay testimony, an ALJ may discount subjective assertions about the extent of a claimant's symptoms by giving "specific reasons . . . supported by the evidence in the case record." *See* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The ALJ reasonably noted that despite her symptoms, Masters remains able to perform routine, daily tasks that he viewed as inconsistent with her allegations that her pain and symptoms were completely debilitating. (*See* R. 10-1 at Page ID # 106-107.) The ALJ determined that the limitations described by Masters' father "describe[d] Spartan restrictions that find little support from the objective record." (*Id.* at Page ID # 109.) In evaluating both Masters' subjective complaints and the lay testimony of her father, the ALJ considered the conservative treatment record and Masters' independent lifestyle and ability to raise her children, drive, pay bills, attend church, and handle common domestic routine. (*Id.*) The ALJ properly considered the inconsistencies in the record and supported his decision to discount the lay testimony with specific reasons, and this Court must defer to those findings. *See* 20 C.F.R. § 416.929(c)(4); *Warner*, 375 F.3d at 392 (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (alteration in original) ("The claimant's credibility may be properly discounted 'to a certain degree . . . where [an administrative law judge] finds contradictions among the medical reports, claimant's testimony, and other evidence.'").

This Court also defers to the ALJ's consideration of the VE testimony. "A vocational expert's testimony concerning the availability of suitable work may constitute substantial

evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Thomas v. Comm'r of Soc. Sec.*, 550 F. App'x 289, 290 (6th Cir. 2014) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). While it is true that an ALJ may rely on a VE's response to a hypothetical question only if the question accurately portrays the claimant's impairments, the "ALJ is required to incorporate only those limitations that he or she accepted as credible." *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389-90 (6th Cir. 2015) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

As previously discussed, the ALJ did not afford weight to the limitations described by Dr. Acob. To the extent Masters challenges whether the ALJ properly considered the VE testimony, it is with respect to the VE's answer to a hypothetical question portraying impairments described only by Dr. Acob. Thus, the ALJ properly relied on the VE's testimony to hypothetical questions incorporating the limitations he accepted as credible. (*See* R. 10-1, Page ID # 159.) It is based on the hypothetical questions involving credible impairments that the ALJ concluded that jobs exist in the national economy that Masters is capable of performing. (*Id.* at Page ID # 110.)

## D.

Finally, Masters contends that the overwhelming evidence alternatively supports a finding of disability based solely on her interstitial cystitis. While Masters correctly notes that the record supports that she has a diagnosis of interstitial cystitis, she does not challenge the ALJ's factual finding that this impairment appears to have resolved with treatment. A reasonable mind can conclude looking at the evidence as a whole that Masters' medical evidence does not show continued issues related to interstitial cystitis after her cystoscopy. (*See* R. 10-1,

Page ID # 386-390.) Thus, the conclusion by the ALJ that Masters' interstitial cystitis is non-severe is supported by substantial evidence in the record.

III.

In light of the record as a whole, the ALJ's determination that Masters is capable of performing a range of simple, light work is supported by substantial evidence. Under that standard, the ALJ properly weighed the medical evidence and lay testimony in the record, gave the appropriate weight to the VE, and reasonably assessed Masters' RFC by consideration of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). We therefore **AFFIRM**.