NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0469n.06

No. 19-2441

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 07, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DANIEL O'BRIEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| COMMISSIONER OF SOCIAL SECURITY, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BOGGS, SUTTON, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Daniel J. O'Brien appeals from the district court's affirmance of the Commissioner of Social Security's decision denying his application for Social Security Disability Insurance Benefits (DIB) on the basis that he was not disabled prior to the expiration of his insured status in December 2015. We affirm.

I. Background

A. Factual Background

O'Brien alleges that he became disabled in April 2009, due to spinal, knee, and other physical impairments[1] that caused back, knee, and hand pain. His insured status expired on December 31, 2015. O'Brien worked at the General Motors' Willow Run plant for 32 years, including as a shipping and receiving clerk, assembler, and an inspector. In 1984, O'Brien fell at

---

[1] O'Brien also alleged various mental impairments, including fatigue from trouble sleeping. He does not challenge on appeal the administrative law judge's (ALJ) decision on the basis of those impairments. We focus only on his physical impairments.

work, sustaining "a jamming injury to his dominant right upper extremity, including his neck region." R. 8-9, PID 690. After a period of temporary incapacitation from this injury, he was cleared to return to GM with restrictions, including no repetitive motion and no lifting above his head. *Id.* at PID 688.

Beginning in May 2008,[2] O'Brien sought treatment for pain from Dr. Laran Lerner, D.O. He was prescribed a regimen of pain medications. He returned to Dr. Lerner in March 2009, complaining of lower back pain following a round of ice hockey. R. 8-7, PID 341. Later that year, in July 2009, O'Brien reported neck and continuing back pain that began after he power washed on a ladder. *Id.* at PID 326. His electromyography (EMG) study during this visit returned normal results and there was "[n]o evidence of lumbosacral radiculopathy or neuropathy." *Id.* at PID 327, 330. In August 2009, Dr. Lerner examined O'Brien again, noting decreased range of motion in the cervical spine and tenderness to palpation. R. 8-8, PID 412. Dr. Lerner diagnosed O'Brien with back, left shoulder, and left knee impairments, and observed that O'Brien could not raise his left arm overhead because of the resulting pain and muscle weakness in his left shoulder and arm. *Id.* O'Brien reported in a pain questionnaire completed during that visit that his pain and ability to work significantly improved with the pain relievers he was prescribed. R. 8-7, PID 324-25.

O'Brien returned to Dr. Lerner the following month. Dr. Lerner's examination again noted decreased range of motion in the cervical spine, but normal range of motion and no tenderness to palpation in the lumbar spine. R. 8-8, PID 410. O'Brien returned to Dr. Lerner on several occasions between September 2009 and September 2010. Dr. Lerner's observations during these visits were largely consistent with the previous observations, and he often adjusted the dosage or changed O'Brien's medication to better control O'Brien's symptoms. In January 2010, O'Brien

---

[2] We recount only the facts most relevant to the ALJ's decision, and those relied on by O'Brien.

returned to Dr. Lerner, complaining of neck pain radiating into his left shoulder and pain and swelling in his right hand following an altercation while playing hockey. R. 8-8, PID 400. Dr. Lerner observed decreased range of motion in both the cervical and lumbar spines as well as tenderness to palpation.

In December 2010, Dr. Lerner observed decreased range of motion and tenderness to palpation in both the cervical and lumbar spines, tenderness to palpation in the left shoulder and left elbow, and an antalgic gait. *Id.* at PID 385. Dr. Lerner again adjusted O'Brien's medications and opined that "[O'Brien] is currently disabled from gainful employment." *Id.*

Between January 2011 and January 2015, O'Brien saw several physicians for pain management, including Dr. Lerner, Dr. Michael Fitzsimmons, M.D. (an orthopedic hand surgeon), and Dr. John Rosella, D.O. (O'Brien's primary care provider). Medical examinations during these visits confirmed decreased range of motion in the spine, tendonitis in the hand and wrist, and knee sensitivity. *See, e.g.*, *id.* at PID 376. His medications were again adjusted, and O'Brien began receiving injections for knee pain.

In January 2015, an MRI of O'Brien's lumbar spine revealed bone spurs that "appear[] to contact the extraforaminal right L5 nerve root," which "may account for a right-sided L5 distribution radiculopathy." *Id.* at PID 424. The MRI also revealed "moderate bilateral foraminal stenosis." *Id.* In May 2015, a MRI of the cervical spine revealed moderate left neural foraminal stenosis at C3-C4, mild to moderate bilateral neural foraminal narrowing at C4-C5, and bilateral facet arthrosis at C7-T1. R. 8-9 PID 500. The overall impression was "multilevel cervical degenerative spondylosis with neural foraminal stenosis." *Id.*

On May 22, 2015, O'Brien underwent a psychological examination by John Jeter, MA, LMSW. *Id.* at PID 502-06. During the examination, O'Brien reported "performing a few light

ADL's [activities of daily living] independently with the support of his brother." *Id.* at PID 503. He was able to go shopping, run errands, cook meals, and do laundry, and had additionally been working part-time for twelve to fifteen hours a week. *Id.* O'Brien reported that his medicines, including Norco for pain, were effective. *Id.* Jeter opined that O'Brien had "no difficulty in the [] ability to comprehend and carry out simple directions, and perform repetitive, routine simple tasks. There is no difficulty in the [] ability to comprehend complex tasks." *Id.* at PID 505.

On June 24, 2015, O'Brien was seen at the Tri County Pain Consultants for complaints that his back pain had continued to worsen over the past 18 months, weakness of the right leg worsened by physical activity,[3] and ongoing neck and knee pain. *Id.* at PID 507. During this examination, O'Brien exhibited normal muscle tone and gait. *Id.* at PID 508. However, a straight-leg raising test was positive on the right at 60 degrees and sensation was "slightly" diminished in the right L5 nerve distribution. *Id.* James Gilson, P.A., diagnosed O'Brien with lumbar/thoracic radiculitis and lumbosacral spondylosis. O'Brien received an epidural injection. The following month, O'Brien returned to Tri County and reported significant improvement from the epidural steroid injection and some relief of his back pain. *Id.* at PID 520. His physical examination results were unchanged, and he received another epidural injection. *Id.* at PID 522.

In August 2015, O'Brien returned to Tri County, reporting increased pain following a golf outing, a cross-country trip to Colorado and back to move his daughter, and installing carpet. *Id.* at PID 518. He was given another injection. In February 2016, examinations of O'Brien's left knee were within normal limits and muscle strength was 5/5. *Id.* at PID 630, 669. The following month, O'Brien refilled his pain medication prescription after hurting his back shoveling snow. *Id.* at PID 622. In April 2016, O'Brien reported increasing knee pain, but examinations revealed

---

[3] O'Brien acknowledged that his pain was alleviated by medications and periods of rest.

full knee strength and negative results for abnormalities. *Id.* at PID 510, 511, 515. He received another injection to the left knee.

### B. Procedural Background

O'Brien applied for Social Security DIB in February of 2015. His application was denied, and he requested a hearing before an ALJ. On April 4, 2017, O'Brien had a hearing before ALJ Lawrence Blatnik. At the hearing, O'Brien and a vocational expert testified. The ALJ issued a decision denying O'Brien's application for benefits on May 24, 2017. R. 8-2, PID 39.

The ALJ performed the required five-step sequential evaluation process for determining whether a claimant is disabled. At step one, the ALJ determined that although O'Brien had worked part-time during this period, his "work activity did not rise to the level of substantial gainful activity." *Id.* at PID 44. At step two, the ALJ determined that O'Brien had "degenerative joint disease/meniscal tear of the left knee and degenerative disc disease of the cervical and lumbar spine," which qualified as severe impairments. *Id.* At step three, the ALJ concluded that "[O'Brien] did not have an impairment or combination of impairments that met or medically equaled the severity of [a] listed impairment . . . ." *Id.* at PID 46. As relevant here, the ALJ determined that O'Brien's spinal impairment did not meet or medically equal a listed impairment because the listing

> [r]equires an impairment resulting in the compromise of a nerve root or spinal cord. Additionally, the claimant would need evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanied by sensory or reflex loss. He would also need to show positive straight-leg raising in the sitting and supine positions. In the alternative, the claimant could have spinal arachnoiditis, confirmed by an operative note, pathology, report, or acceptable imaging. The spinal arachnoiditis would need to manifest in severe burning or painful dysesthesia, resulting in the need for the claimant to change position or posture more than once every two hours. If the claimant does not meet either of the preceding options, he could show that he has lumbar spinal stenosis resulting in pseudoclaudication, established by findings on

acceptable imaging, that manifests in chronic nonradicular pain and weakness, which results in the inability for the claimant to ambulate effectively.

*Id.* at PID 46. The ALJ determined that the medical evidence in the record did not meet any of these conditions. At step four, the ALJ determined that O'Brien had the residual functional capacity (RFC) to:

perform light work . . . . Specifically, he was able to lift, carry, push or pull 20 pounds occasionally and ten pounds frequently . . . was able to sit for six hours, stand for six hours, and walk for six hours. He could occasionally reach overhead with either upper extremity. The claimant could frequently handle and finger with the right hand. He was able to climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds.

*Id.* at PID 47. Finally, the ALJ determined that, through the date last insured, O'Brien was capable of performing his past relevant work as a shipping and receiving clerk, assembler, and inspector, and, therefore, was not disabled. *Id.* at PID 49-50.

O'Brien sought judicial review in the district court, and the parties' cross-motions for summary judgment were referred to a magistrate judge for a report and recommendation (R&R). R. 1. As relevant here, the R&R disagreed with the Commissioner and concluded that the ALJ should have obtained a medical opinion on whether O'Brien's medical impairments were equivalent to a listed impairment at step 3.[4] The R&R concluded, however, that the error was harmless because O'Brien bore the burden of demonstrating that his impairments were at least as severe as a listing, and he could not meet that burden given the evidence in the record. The R&R

---

[4] This dispute centered on the applicability of Social Security Ruling 96-6p, which generally requires that the finding at step 3 that a claimant does not medically equal a listed impairment be supported by a medical opinion. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . . ."). The Commissioner argued that Social Security Ruling 17-2p, which repealed SSR 96-6p, applied. That Ruling provides that an ALJ may find that a claimant does not meet or exceed a listed impairment even without a supporting medical opinion. *See* SSR 17-2p, 2017 WL 3928306, at *4 (effective Mar. 27, 2017). Because O'Brien filed his claim for benefits on February 17, 2015, which was a month prior to the effective date of SSR 17-2p, the magistrate judge concluded that SSR 96-6p was applicable. *See, e.g.*, R. 17, PID 787.

also concluded that substantial evidence supported the ALJ's RFC determination, and therefore recommended that the Commissioner's motion for summary judgment be granted. R. 17, PID 785-800.

O'Brien filed objections to the R&R, arguing that the ALJ's failure at step three to obtain a medical opinion on equivalence was *per se* reversible error and that the ALJ's RFC determination that O'Brien could perform a range of light work was erroneous. In response to O'Brien's objections to the R&R, the Commissioner repeated its assertion that SSR 17-2p[5] applied and that the ALJ properly considered all of the evidence when determining that O'Brien had the RFC to perform a range of light work.

The district court concluded that the Commissioner forfeited the argument that SSR 17-2p applies, and that the magistrate judge was correct that SSR 96-6p applied. R. 27, PID 873-74. However, the district court concluded that even under SSR 96-6p, remand was not warranted because O'Brien failed to show that his medical impairments met or exceeded a listing. *Id.* at 874-75. The district court also determined that the ALJ's RFC determination was reasonable and appropriately considered all the evidence in the record, including O'Brien's testimony about the extent of his impairments. The district court held that O'Brien's objections "amount to little more than a critique on how the ALJ weighed the evidence." *Id.* at PID 876. The district court granted the Commissioner's motion for summary judgment. *Id.* at PID 879. O'Brien renews his arguments on appeal.

_____

[5] The Commissioner argued that there is nothing in SSR 17-2p stating that it applies *only* to claims filed on or after its effective date. Rather, it became effective on March 27, 2017, and because it, and not its predecessor, was in effect at the time the ALJ issued its decision, it applied. In support, the Commissioner cited to portions of the Social Security Hearings, Appeals, and Litigation Law Manual (HALLEX) which instruct ALJs to cite SSR 17-2p even for claims filed before March 27, 2017. *See, e.g.*, R. 21, PID 835 (Comm'r Br., citing HALLEX § I-5-3-30(IV)(F), 2017 WL 1362776, at *5 (Apr. 14, 2017)).

## II. Discussion

We first consider the disputes between the parties about whether SSR 96-6p or SSR 17-2p applies here and whether the Commissioner forfeited his argument that the latter applies by failing to object to the R&R's application of the former. On appeal, both parties cite language from the HALLEX in support of their respective positions. We need not decide which view is correct, however, because we agree with the magistrate judge and the district court that, even if SSR 96-6p applies and the ALJ erred by failing to seek a medical opinion on equivalence, the error was harmless.

At step three, O'Brien bears the burden of demonstrating from medical evidence in the record that his impairments meet or exceed a relevant listing. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any gainful activity*, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis added). To succeed on his claim that his impairments match a listing, O'Brien's impairments "must meet *all* of the specific medical criteria. An impairment that manifests only some of these criteria, no matter how severely, does not qualify." *Id.* at 530. In the alternative, O'Brien may demonstrate medical equivalence by demonstrating that his impairments are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). But, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531.

The only listing at issue is Listing 1.04(A) (Disorders of the spine). That Listing applies when the impairment includes, inter alia, "herniated nucleus pulposus, spinal arachnoiditis, spinal

stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture" that "result[s] in compromise of a nerve root." A given set of impairments may qualify under this listing in several ways.[6] But, the ALJ determined that none of the options applied here because O'Brien's medical examinations concluded that he retained full strength in his legs, there was no evidence of nerve-root compression, and there was no evidence of positive straight-leg raising tests in both the sitting and supine positions. R. 8-2, PID 46, 48.

We agree that because there is no evidence of nerve-root compression (accompanied by motor loss and positive straight-leg raising tests in both the sitting and supine position), spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, the evidence does not support a finding that O'Brien's impairments meet or are equivalent to this Listing. *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) ("to establish the equivalent of nerve-root compression, Bailey must demonstrate a lack of motor strength, a lack of sensory functions, and a positive straight-leg raising test, among other things . . . . She cannot do so: numerous doctors' reports show the opposite of these findings."); *see also Kallenbach v. Berryhill*, 766 F. App'x 518, 520 (9th Cir. 2019) (per curiam) (holding that a claimant failed to meet Listing 1.04(A) criteria where medical records of positive straight-leg raising tests did not specify both sitting and supine testing). The January 2015 MRI finding of possible nerve-root contact and the one positive straight-leg raising test fail to show "nerve root *compression* characterized by . . . positive straight-leg raising test (sitting *and* supine)." Listing 1.04(A) (emphasis added). Because the evidence did not show that O'Brien's medical findings are equivalent to *all* the criteria in Listing 1.04(A), we

---

[6] An impairment meets Listing 1.04(A) where there is 1) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, App'x 2 § 1.04.

agree with the Commissioner that the failure to have a medical consultant evaluate the evidence was harmless. Substantial evidence supports the ALJ's conclusion that O'Brien's impairments do not meet or exceed this Listing.

O'Brien additionally argues that the ALJ's RFC determination was not supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, O'Brien bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

As noted above, the ALJ determined that O'Brien had the RFC to perform light work and was able to "lift, carry, push or pull 20 pounds occasionally and ten pounds frequently," able to sit, stand, and walk for six hours, and that he could "occasionally reach overhead with either upper extremity," "could frequently handle and finger with the right hand," and "was able to climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds." R. 8-2, PID 47.

In arriving at this RFC, the ALJ noted that

[O'Brien] alleges he was unable to work due to a combination of symptoms from his impairments. Specifically, the claimant testified that he is unable to work due to pain and [] has difficulty on his feet. He alleges he was able to be on his feet for

less than 30 minutes. The claimant testified that he could [sit] or [stand] for approximately 15 to 20 minutes at a time.

. . .

The claimant has complained of low back pain radiating into his left hip and neck pain radiating into the bilateral shoulders. Examination has shown decreased range of motion of the claimant's cervical and dorsolumbar spine, with tenderness to palpation. He had an antalgic gait. His strength was intact, but he had diminished sensation in the right L5. . . . There was also multilevel spondylosis without significant spinal canal stenosis at other levels. An MRI of his cervical spine performed on May 8, 2015 showed multilevel cervical degenerative spondylosis with narrow foraminal stenosis. The claimant received epidural steroidal injections for his back pain, which alleviated his pain. Despite his back pain, the claimant went on a three-day golf outing in the northern part of the state, drove to Colorado and back, and installed carpet during the relevant time period.

The claimant has had tenderness to palpation of his bilateral knees, with full strength and range of motion. X-rays of the claimant's left knee taken on February 16, 2016, were essentially negative. X-rays of the claimant's left knee taken on April 11, 2016, showed minimal marginal spurring of the patellofemoral joint compartment.

The claimant has complained of right hand pain after playing hockey. On examination, he had some mild soft tissue swelling around the third metacarpophalangeal joint. . . . The anti-inflammatory medication that he was using helped alleviate his symptoms.

*Id.* at PID 47-48 (citations omitted). On appeal, O'Brien primarily challenges how the ALJ evaluated the medical evidence in the record, contending that the ALJ ignored Dr. Lerner's opinion in December 2010 that O'Brien was disabled from gainful employment, over-emphasized O'Brien's successful treatment with pain relievers and steroid injections, and impermissibly considered O'Brien's outside activities when determining his RFC. We disagree.

First, Dr. Lerner's December 2010 statement that O'Brien was "disabled" is not dispositive. As we have explained before, an ALJ may "reasonably [give] no weight to [a treating physician's] opinion because [the] conclusion that [the claimant] is totally disabled is a determination reserved to the Commissioner." *Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310,

311 (6th Cir. 2016); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (noting that "a conclusion of disability is reserved to the Secretary . . . and that no 'special significance' will be given to opinions of disability, even if they come from a treating physician"). This is especially true where Dr. Lerner's opinion omits any discussion of how the multiple impairments he diagnosed limit O'Brien's ability to work and why such impairments, in the aggregate, are work-preclusive.

Second, we have often concluded that ALJs properly discounted the opinions of treating physicians where the opinions were incompatible with the claimant's generally conservative course of treatment or activities of daily living. *See, e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (concluding that ALJ had good reasons to reject physician's statement that claimant's ailments were "quite restrictive" where the claimant had received only conservative treatment for symptoms); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (same); *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 641 (6th Cir. 2016) (concluding that substantial evidence supported ALJ's decision where pain medication and spinal injections alleviated symptoms). Here, for example, medical records and O'Brien's own testimony confirm that the pain and anti-inflammatory medication and steroidal injections alleviated his pain.

Finally, O'Brien argues that the ALJ improperly considered his various activities, including his recent part-time work, his three-day golf outing, his cross-country trip to and from Colorado, and his daily activities. We have long held that "[a]s a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (per curiam); *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) ("The ALJ reasonably noted that despite her symptoms, Masters remains able to perform routine, daily tasks that he viewed as inconsistent with

her allegations that her pain and symptoms were completely debilitating."). Here, the ALJ reasonably concluded that O'Brien's subjective evaluations of his physical abilities was inconsistent with his daily activities, his recent part-time work as a "clean-up man," his golf trip and cross-country trip to and from Colorado, his shoveling of snow, and his carpet installation. Substantial evidence supports the ALJ's conclusion that O'Brien experienced "mild to moderate functional limitations in his ability to perform basic work activities . . . ." R. 8-2, PID 49. On this record, O'Brien has not met his burden of demonstrating that the RFC assessed by the ALJ was not supported by substantial evidence.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.