NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0239n.06

No. 22-5948

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 26, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ROBYN LYNN MARIE SNYDER, | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
| Defendant-Appellee. | ) | |
|  | ) | OPINION |

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

PER CURIAM. Robyn Lynn Marie Snyder appeals the district court's judgment affirming the Commissioner of Social Security's decision denying her application for disability insurance benefits. For the reasons set forth below, we **AFFIRM** the district court's judgment.

In December 2015, Snyder filed an application for disability insurance benefits, claiming in relevant part that she was disabled as of June 25, 2013, due to chronic migraine headaches. Her application proceeded to an evidentiary hearing before an administrative law judge (ALJ). The ALJ found that Snyder's headaches did not impose any significant work-related limitations in function and therefore were a non-severe impairment under the Social Security regulations. The ALJ found that Snyder's severe impairments, which included affective disorder, anxiety disorder, and post-traumatic stress disorder (PTSD), did not preclude her from performing jobs such as night cleaner, bench worker, and document specialist. Accordingly, the ALJ concluded that Snyder was not disabled and denied her application. The Appeals Council denied Snyder's request for review.

Snyder filed a timely complaint for judicial review of the Commissioner's decision. In the district court, the parties consented to a reversal of the ALJ's decision and a remand of the case to the Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the Appeals Council ordered the ALJ to consider whether Snyder's chronic migraine headaches were a severe impairment under Social Security Ruling 19-4p, re-evaluate whether Snyder's combination of impairments was "severe" under 20 C.F.R. § 404.1523(c), reconsider Snyder's residual functional capacity (RFC), and, if warranted, obtain supplemental evidence from a vocational expert (VE) on the effect of Snyder's limitations on her occupational base.

The ALJ obtained a new medical opinion from a state-agency reviewing physician, neurologist Dr. Lauren Frey, who stated that Snyder did not have a neurological impairment that caused any physical functional impairment. The ALJ then held a second evidentiary hearing on Snyder's application, during which Snyder and a VE testified. Snyder testified that she suffered from migraine headaches on a daily basis and that she spent most days lying in bed or on the couch. She did little or no housework because it caused overheating, nausea, and vomiting. Various treatment courses, such as Botox injections and lidocaine and ketamine drips, provided little or no relief from her headaches. Light and noise exacerbated the pain of Snyder's migraines, so she wore earplugs and a hat and sunglasses to shield her eyes.

Based on the hypothetical provided by the ALJ, which eliminated jobs with even moderate exposure to bright lighting and noise levels in excess of level three in the Dictionary of Occupational Titles, the VE testified that Snyder could perform her past job as a coffee maker, as well as other jobs such as document preparer, photocopy machine operator, and gate attendant. According to the VE, these jobs existed in significant numbers in the national economy. On cross-examination by Snyder's attorney, the VE testified that Snyder would be precluded from

competitive employment if she missed more than one day of work per month or had to take more than three to four unscheduled breaks per day because of nausea and vomiting.

The ALJ denied Snyder's claim. Proceeding through the five-step disability determination sequence, *see* 20 C.F.R. § 404.1520, the ALJ first found that Snyder had not engaged in any substantial gainful activity since the alleged onset date of disability.

At the second step, the ALJ found that Snyder had the severe medical impairments of affective disorders, anxiety disorders, PTSD, and migraine headaches.

At the third step, the ALJ found that Snyder did not have an impairment or combination of impairments that met or equaled a listed impairment. In reaching that conclusion, the ALJ stated that he had "considered the claimant's impairments under the provisions of listings 11.00 (Neurological Disorders) and found that the claimant's conditions do not meet or medically equal the criteria of the listed impairments." Additionally, the ALJ found that "[t]he claimant does not allege that she has an impairment of listing level severity, nor has she met her burden of presenting medical evidence that supports such a finding."

At the fourth step, the ALJ found that Snyder had the RFC to perform work at all exertional levels, but that she was limited to performing simple, routine, repetitive tasks, without production requirements, and only occasional interaction with the public, co-workers, and supervisors. Additionally, the ALJ found that Snyder had to avoid even moderate exposure to bright lighting, noise levels in excess of three, and concentrated exposure to fumes and odors. In support of this determination, the ALJ discussed Snyder's history of migraines and the various treatments she had tried. In particular, the ALJ found that Snyder's treatment notes consistently reported that she had intact reflexes with no sensory or coordination loss. The ALJ reasoned that if Snyder's neurological impairment was as debilitating as claimed, her records would indicate some

diminishment of her reflexes. The ALJ also afforded "great weight" to Dr. Frey's opinion because Dr. Frey reviewed the entire record and concluded that Snyder did not have a "physical functional impairment on a neurological basis."

At the fifth step, the ALJ concluded that this RFC would allow Snyder to perform her past relevant work as a coffee maker. Alternatively, the ALJ found that this RFC would permit Snyder to perform the document preparer, photocopy machine operator, and gate attendant jobs identified by the VE. The ALJ thus concluded that Snyder was not disabled under the Social Security regulations and denied her application for disability insurance benefits.

The Appeals Council denied Snyder's request to review the ALJ's decision, making that decision the final decision of the Commissioner. Snyder filed another timely complaint for judicial review of the ALJ's decision in district court. *See* 42 U.S.C. § 405(g). She argued that the ALJ's decision was not supported by substantial evidence because he (1) did not properly evaluate her credibility, (2) violated the treating physician rule by not crediting the opinions of Dr. Johnathan Smith, a neurologist who treated her headaches between 2013 and 2017, and (3) failed to consider whether her headache disorder was medically equivalent to Listing 11.02 for epilepsy. The district court rejected these arguments and affirmed the ALJ's decision. Snyder raises the same three arguments in this timely appeal.

## A. Standard of Review

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence exists "if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* at 406 (cleaned up). We review de novo the district court's conclusions on each issue. *Id.*

B. <u>Analysis</u>

1. <u>Listing 11.02</u>

Snyder first argues that the ALJ failed to consider whether her headache disorder was medically equivalent to Listing 11.02 for epilepsy under Social Security Ruling 19-4p.

At the third step of the disability evaluation sequence, the ALJ must determine whether the claimant's medically determinable impairment meets or equals a listed impairment. A claimant whose impairment or combination of impairments meets or equals a listed impairment is conclusively disabled and entitled to benefits without any further need for the ALJ to complete the remaining steps of the sequence. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020). An "impairment[] is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). "A claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Zebley*, 493 U.S. at 531)).

Social Security Ruling 19-4p, 2019 WL 4169635 (Aug. 26, 2019), establishes the Commissioner's guidelines on evaluating primary headache disorders in disability claims. The ruling identifies Listing 11.02 as "the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder." *Id.* at *7. "While uncommon," the ruling states, "a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." *Id.*

Paragraph B of Listing 11.02 requires "[d]yscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.02(B) (citations omitted).[1] Paragraph D requires "[d]yscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment" and a marked limitation in at least one area of functioning. To determine whether a primary headache disorder is medically equivalent to Listing 11.02, the Commissioner requires:

> A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7.

The ALJ did not specifically cite Listing 11.02 in his decision, but Snyder does not dispute the ALJ's finding that she did "not allege that she has an impairment of listing level severity[.]" In any event, the ALJ stated that he had considered whether Snyder's impairments met or equaled the impairments under Listing 11.00. We are therefore satisfied that the ALJ evaluated whether Snyder's migraine headaches equaled Listing 11.02. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (declining to remand the case to the ALJ for a further

---

[1] "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11.02(B) (citations omitted)

explanation of his step-three reasoning because the claimant did not argue at the evidentiary hearing that he met a particular listing); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (holding that "[t]he ALJ did not err by not spelling out every consideration that went into the step three determination").

We conclude further that substantial evidence supports the ALJ's determination that Snyder's migraine headaches did not equal Listing 11.02. As an initial matter, Snyder has not directed us to a statement from an acceptable medical source that complies with SSR 19-4p, i.e., one that provides a detailed description of a typical migraine event, the side effects of her medications, and, most importantly, an opinion concerning the limitations in functioning associated with her migraines. In contrast, Dr. Frey stated that Snyder's neurological impairments did not cause any physical limitations.[2] Another state-agency consultant, Dr. Sprague, stated that Snyder was only mildly impaired in her ability to sustain concentration and attention. Other substantial evidence, such as contemporaneous treatment notes, consultative examination reports, and the ALJ's assessment of Snyder's demeanor during the evidentiary hearing, supported the finding that Snyder was only moderately impaired in remembering, interacting with others, maintaining concentration, persistence, and pace, and adapting or managing herself. *See* SSR 19-4p, 2019 WL 4169635, at *7 (providing that medical equivalence requires marked limitations in these areas).

Consequently, we find no reversible error in the ALJ's step-three analysis.

---

[2] Snyder criticizes the ALJ's reliance on Dr. Frey's opinion and other medical evidence showing that her reflexes were intact because she claimed disability based on migraine headaches and not due to a physical impairment. But this evidence was relevant in determining whether Snyder's migraines caused limitations in physical functioning, *see* SSR 19-4p, 2019 WL 4169635, at *7, and supported the ALJ's step-three findings.

2. <u>The ALJ's Credibility Evaluation</u>

Snyder next argues that the ALJ failed to properly evaluate her credibility. The term "credibility" is no longer a part of the disability lexicon, however, because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). Instead, the Commissioner "will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id.* at *6. We review an ALJ's assessment of such statements under the substantial-evidence standard. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012).

Here, Snyder testified that, due to her symptoms, "she is incapable of working[.]" But the ALJ found that statement to be inconsistent with the medical evidence and other evidence in the record. Instead, the ALJ found that Snyder had the RFC to "perform a reduced range of work activity," so long as she limited herself to jobs that did not expose her to bright lighting, noise levels more than level three, or concentrated levels of certain smells. And the ALJ supported these findings by analyzing Snyder's testimony about her migraine symptoms, her extensive treatment history, and the opinions of three medical experts, which said that the evidence did not support physical restrictions and limitations. The ALJ thus provided an adequate rationale and referred to particular evidence in the record to support the weight it afforded to Snyder's testimony when it developed her RFC. *Cf. Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007).

Accordingly, we conclude that the ALJ appropriately considered Snyder's statements and the evidence in the record when it developed her RFC.

### 3. Treating Physician Rule

Lastly, Snyder argues that the ALJ violated the treating physician rule.

Snyder filed her claim for disability insurance benefits before the regulations were amended in March 2017 to eliminate the "treating physician rule." *See* 20 C.F.R. § 404.1520c (2017). Under the treating physician rule, the opinion of a claimant's treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Rogers*, 486 F.3d at 242 (cleaned up). But

> [i]f the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). There is a rebuttable presumption "that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing SSR 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")).

Snyder contends that the ALJ ignored Dr. Smith's findings that her headaches caused severe chronic pain, olfactory hallucinations, and visual disturbances. According to Snyder, had the ALJ given controlling weight to these findings he would have been compelled to find that she was credible about the intensity and persistence of her migraines. In support of this argument, Snyder cites only a September 3, 2015, treatment record in which Dr. Smith noted, under the heading "Active Problems," that she had "chronic pain," "headache," "intractable chronic migraine without aura and with status migrainosus" (i.e., that does not respond to treatment or lasts

longer than 72 hours), "olfactory hallucination," and "other visual disturbances." We conclude that her arguments do not demonstrate that the ALJ violated the treating physician rule.

First, Snyder's arguments address whether her migraines were a severe impairment, and the ALJ, consistent with Dr. Smith's treatment notes, found that they were. Snyder's case is therefore distinguishable from *Rogers*, where we found that the ALJ violated the treating physician rule by discounting the treating doctors' opinions and findings showing that the claimant's fibromyalgia was a severe impairment. *See Rogers*, 496 F.3d at 244-46.

Second, Dr. Smith did not express an opinion that Snyder's migraines resulted in any functional limitations. *See Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017) (noting that the mere diagnosis of a severe impairment by a treating physician is insufficient by itself to establish disability); *accord Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). So the claimed error could not have affected the ALJ's determination of Snyder's RFC.

We conclude therefore that the ALJ did not violate the treating physician rule.

## Conclusion

We **AFFIRM** the district court's judgment.